UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
SHADAY DELGADO,
Plaintiff,

Civil Case No. 1:26-cv-03504

-against-

PLANNED PARENTHOOD OF GREATER NEW YORK, INC.,

Defendant.
---------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANT'S MOTION TO DISMISS</u>**

KAUFMAN DOLOWICH, LLP
Attorneys for Defendant
Planned Parenthood of Greater New York
245 Main Street, Suite 330
White Plains, New York 10601
(914) 470-0001

On the brief:

Charles B. Bergin

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ........ 1

II. FACTUAL BACKGROUND ........ 5

III. ARGUMENT ........ 8

A. Motion to Dismiss Standard ........ 8

B. The Complaint Fails To State A Claim Under Title VII and the ADA (Counts Three, Four, Five and Six) ........ 9

i. Plaintiff's Title VII and ADA Claims Are Time-Barred ........ 9

ii. Plaintiff's Title VII Claims Based On Plaintiff's Alleged Status As A Victim of Domestic Violence Fail As Title VII Not Recognize Such A Protected Class ........ 11

iii. Plaintiff's ADA Claim Must Be Dismissed For Want of Administrative Exhaustion ........ 12

iv. Plaintiff's ADA Claim Fails To State A Claim As She Does Not Identify Any Qualifying Disability ........ 12

v. Plaintiff's Title VII Claims Fail To State A Claim ........ 13

C. The Complaint Fails To State A Claim Under Section 1981 (Count One) ........ 21

D. Plaintiff's FMLA Interference Claims Fail (Count Two) ........ 21

E. Plaintiff's FMLA Retaliation Claims Fail ........ 24

F. Supplemental Jurisdiction ........ 25

G. The Complaint Fails To State A Claim Under the NYSHRL and NYCHRL (Counts Seven, Eight, Nine and Ten) ........ 26

IV. CONCLUSION ........ 30

## TABLE OF AUTHORITIES

Cases Page No.

*Abada v Delta Air Lines, Inc.*,
No. 21-123, 2022 WL 894704 (2d. Cir. Mar. 28, 2022) ... 19

*Adams v. Equinox Holdings, Inc.,*
No. 19-CV-8461 (AJN), 2020 WL 5768921 (S.D.N.Y. Sept. 28, 2020) ... 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 8,9,13

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ... 8

*Banks v. Gen. Motors, LLC*
81 F.4th 242 (2d Cir. 2023) ... 10,21

*Brown v. Daikin Am. Inc.*,
756 F.2d 219 (2d Cir. 2014) ... 19

*Budhan v. Brightworks Sustainability LLC*,
2025 WL 919926 (S.D.N.Y. March 26, 2025) ... 26

*Buon v. Spindler*,
65 F.4th 64, 77 (2d Cir. 2023) ... 10,14

*Comcast Corp. v. Nat'l Ass'n of Afr. AM.-Owned Media*,
589 U.S. 327 (2020) ... 21

*Doe v. Columbia Univ.,*
14-CV-3573, 2015 WL 1840402 (S.D.N.Y. 2015) ... 28

*Duplan v. City of New York*,
888 F.3d 612 (2d Cir. 2018) ... 20

*Farooq v. City of New York*,
No. 20-3185, 2022 WL 793117 (2d Cir. Mar. 16, 2022) ... 19

*Federman v. Empire Fire and Marine Ins. Co.*,
597 F.2d 798 (2d Cir. 1979) ... 25

*Ferraro v. Kellwood Co.*,
440 F.3d 96 (2d Cir. 2006) ... 30

*Forrest v. Jewish Guild for the Blind*,
3 N.Y.3d 295, 313 (2004) ... 29

*Gingold v. Bon Secours Charity Health System.*,
768 F.Supp.2d 537 (S.D.N.Y. 2011) ... 25

*Giordano v. City of New York*,
274 F.3d 740, 747 (2d Cir. 2001) ........ 12

*Gonzalez v. City of New York*,
377 F. Supp. 3d 273, 291 (S.D.N.Y. 2019) ........ 20

*Grant v. N.Y. State Office for People with Developmental Disabilities*,
2013 WL 3973168 (E.D.N.Y. July 30, 2013) ........ 29

*Graziadio v. Culinary Institute of America*,
817 F.2d 415 (2d Cir. 2016) ........ 22

*Haran v. Orange Business Services, Inc.*,
160 F.4th 51 (2d Cir. 2025) ........ 24

*Hardaway v. Hartford Pub. Works Dep't.*,
879 F.3d 486, 489 (2d Cir. 2018) ........ 10,12

*Horsham v. Fresh Direct*,
136 F.Supp.3d 253 (E.D.N.Y. 2015) ........ 13

*Islam v. Steiner,*
24 Civ. 10064 (DH), 2026 WL 589600 (S.D.N.Y. Mar 2, 2026) ........ 24,25

*Jacques v. DiMarzio, Inc.*,
200 F. Supp.2d 151, 159 (2d Cir. 2002) ........ 13

*Jordan v. County of Chemung*,
264 F. Supp.3d 497 (W.D.N.Y. 2017) ........ 24

*Kassner v. 2nd Ave. Delicatessen, Inc.*,
496 F.3d 229 (2d Cir. 2007) ........ 26

*King v. Aramark Servs. Inc.*,
96 F.4th 546 (2d Cir. 2024) ........ 10

*Kirkland-Hudson v. Mount Vernon City Sch. Distr.*,
665 F. Supp. 3d 412 (S.D.N.Y. 2023) ........ 20

*Lee v. Grocery Haulers, Inc.*,
No. 22-680, 2023 WL 8253089 (2d Cir. Nov. 29, 2023) ........ 19

*Littlejohn v. City of New York*,
795 F.3d 297 (2d. Cir. 2015) ........ 14

*Lively v. WAFRA Inv. Advisory Grp., Inc.*,
6 F.4th 293 (2d Cir. 2021) ........ 19

*Marcus v. AT&T Corp.*
138 F.3d 46, 57 (2d Cir. 1998) ........ 26

*Martinez v. Staten Island University Hospital*,
814 F.Supp.3d 380 (E.D.N.Y. 2026) ..... 21

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ..... 14,24

*Mitchell v. Planned Parenthood of Greater New York, Inc.*,
745 F. Supp.3d 68 (S.D.N.Y. 2024) ..... 10,18,19,20,27,28

*Mitchell v. Planned Parenthood of Greater New York, Inc.*,
2025 WL 1795378 (S.D.N.Y. June 30, 2025) ..... 12,14,20

*Muldrow v. City of St. Louis, Missouri*,
601 U.S. 346, 144 S. Ct. 967, 218 L. Ed. 2d 322 (2024) ..... 14,15,16

*Nat'l R.R. Passenger Corp. v. Morgan*,
536 U.S. 101 (2002), ..... 10

*Noh v. Admarketplace, Inc.*,
2025 WL 965882 (S.D.N.Y. March 28, 2025) ..... 17,18

*Okeke v. Interfaith Med. Ctr.*,
205 N.Y.S.3d 189 (2024) ..... 27

*Parker v. Metropolitan Transp. Auth.,*
2007 WL 2962737 (Sup. Ct. Kings Cnty, Sept 21, 2007) ..... 29

*Pennsylvania State Police v. Suders,*
542 U.S. 129, 147 (2004) ..... 17

*Porter v. New York University School of Law*,
392 F.3d 530 (2d Cir. 2004) ..... 23

*Purcell v. N.Y. Inst. Of Tech – Coll. of Osteopathic Med.*,
931 F.3d 59 (2d Cir. 2019) ..... 10

*Purgess v. Sharrock*,
33 F.3d 134 (2d Cir. 1994) ..... 25

*Rosich v. La Salle Academy*,
2025 WL 2410596 (S.D.N.Y. Aug 20, 2025) ..... 16

*Russo v. New York Presbyterian Hosp.*,
972 F. Supp.2d 429 (E.D.N.Y. 2013) ..... 27

*Siroy v. Jobson Healthcare Information LLC*,
2019 WL 1598021 (D. N.J. April 15, 2019) ..... 29

*Soloviev v. Goldstein*,
104 F. Supp. 3d 232 (E.D.N.Y. 2015) ..... 27,28

*Soules v. Conn. Dep't of Emergency Servs. & Pub. Prot.*,
882 F.3d 52, 57 (2d Cir. 2018) (ADA) .......... 10

*Starr v. Sony BMG Music Entertainment*,
592 F.3d 314 (2d Cir. 2010) .......... 9

*Terry v. Ashcroft*,
336 F.3d 128 (2d Cir. 2003) .......... 18

*Taylor v. Children's Village*,
2021 WL 1581568 (S.D.N.Y. April 21, 2021) .......... 12

*Tulino v. Ali,*
No. 15 Civ. 7106 (JSR), 2019 WL 1447134 (S.D.N.Y. Feb 27, 2019) .......... 17

*Valencia ex rel. Franco v. Lee*,
316 F.3d 299 (2d Cir. 2003) .......... 25

*Ward v. Cohen Media Publ'ns LLC,*
No. 22-cv-06431 (JLR), 2023 WL 5353342 (S.D.N.Y. Aug 21, 2023) .......... 27

*West v. City of Hartford*,
818 F.Supp.3d 282 (D. Conn. 2025) .......... 15

*Williams v. N.Y.C. Hous. Auth.*,
872 N.Y.S.2d 27 (2009) .......... 28

*Williams v. Westchester Med. Ctr. Health Network,*
No. 21-cv-03746 (KMK), 2024 WL 990153 (S.D.N.Y. Mar. 7, 2024) .......... 18

Rules & Statutes — Page No.

28 U.S.C. § 1367 .......... 25

29 C.F.R. § 825.115 .......... 22

29 C.F.R. § 825.202 .......... 22

29 U.S.C. § 2612(a)(1) .......... 22

29 U.S.C. § 2615 .......... 2

29 U.S.C. § 2617 .......... 23

42 U.S.C. § 1981 .......... 2,21

42 U.S.C. § 2000e-2 .......... 2,12

42 U.S.C. § 2000e-3 .......... 2

42 U.S.C. § 12112 .......... 2

42 U.S.C. § 12203 .......... 2

Executive Law § 8-107 .......... 3

Executive Law § 296 .......... 2,3

F.R.C.P. Rule 12(b)(6) .......... 1,8,30

F.R.C.P. Rule 12(b)(1) .......... 30

## I. PRELIMINARY STATEMENT

Defendant Planned Parenthood of Greater New York, Inc. ("PPGNY" or "Defendant") respectfully submits this memorandum of law in support of Defendant's Motion to Dismiss the Complaint filed by Plaintiff Shaday Delgado ("Plaintiff"), on April 28, 2026, for which Summons was executed on May 8, 2026 (the "Complaint") in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant attaches the Attorney Affirmation of Charles B. Bergin with attached exhibits in support of the motion.

Plaintiff began as an intern at PPGNY in 2019 and held various administrative roles until her resignation in July 2024. Factually, Plaintiff's Complaint is divided into four parts. ***First***, Plaintiff claims that between September 2019 and June 2023 her co-workers made allegedly offensive comments, which she characterizes as race, religion, sex, gender, and domestic violence victim status "discrimination". ***Second,*** Plaintiff asserts that in or around July 2023 she complained to her supervisor that a co-worker had made derogatory comments about medical assistants (which Plaintiff was not). ***Third,*** Plaintiff describes scheduling disputes that Plaintiff attempted to negotiate with both PPGNY and her union beginning in February 2024. Specifically, Plaintiff asserts that she was given a pay increase and a promotion. However, as acknowledged in the Complaint, Plaintiff – who held an administrative position - wanted to be paid for a full time forty hour week schedule, but without actually working on Fridays between 8.30am and 5.30pm (*i.e.* during PPGNY business hours). As this was naturally not acceptable, PPGNY/Plaintiff's union offered her a choice: she could work a part time twenty two hour per week schedule with her hourly pay increase (thus accommodating her preference to avoid working Fridays at all), or she could

work the full forty hour a week schedule, also with the pay increase, and use paid time off ("PTO") or Family and Medical Leave Act ("FMLA") leave for her therapy appointment. Plaintiff confoundingly describes this choice as a "pay decrease", but ultimately chose the latter. ***Fourth***, Plaintiff asserts that over the course of eight days beginning in late April 2024 Plaintiff twice requested FMLA information from PPGNY. The first time, PPGNY provided the documents the same day. The second time Plaintiff asked for FMLA documentation, the Complaint asserts that PPGNY did not provide it at all: the Complaint later concedes that PPGNY "*finally*" (emphasis in the Complaint) provided the requested FMLA documentation two business days after Plaintiff requested it, one day of which Plaintiff called out sick. The Complaint concedes that when Plaintiff applied for FMLA, PPGNY immediately approved it. A few weeks later, Plaintiff resigned.

Plaintiff alleges the following causes of action:

- Discrimination, retaliation and constructive discharge in violation of 42 U.S.C. § 1981 ("Section 1981");
- FMLA interference and retaliation in violation of 29 U.S.C. § 2615;
- Discrimination in violation of the Americans with Disabilities Act of 1990 (the "ADA") 42 U.S.C. § 12112;
- ADA retaliation in violation of 42 U.S.C. § 12203;
- Title VII discrimination in violation of 42 U.S.C. § 2000e-2;
- Title VII retaliation in violation of 42 U.S.C. § 2000e-3;
- Discrimination in violation of the New York State Human Rights Law (the "NYSHRL", New York Executive Law § 296;

- Retaliation in violation of the NYSHRL, New York Executive Law § 296(7);
- Discrimination in violation of the New York City Human Rights Law (the "NYCHRL"), Administrative Code of the City of New York § 8-107(1);
- Retaliation in violation of the New York City Human Rights Law (the "NYCHRL"), New York Executive Law § 8-107(7);

Each of Plaintiff's causes of action fail to state a claim.

As an initial matter, Plaintiff's Title VII and ADA claims are time-barred, because they are predicated upon allegedly discriminatory comments made between September 2019 and June 2023, which are more than 300 days before Plaintiff pursued her administrative remedies by filing an Equal Employment Opportunity Commission ("EEOC") charge on July 1, 2024. Plaintiff's Title VII and ADA claims further fail because domestic violence victim status is not a protected class under federal law; because Plaintiff failed to exhaust her administrative remedies for an ADA claim as her EEOC charge does not mention any disability; and because the Complaint does not set forth a qualifying disability under the ADA. Even if the Complaint could clear these baseline hurdles, which it cannot, the Complaint fails to state a claim under Title VII or the ADA: it does not identify any adverse action, it does not plausibly allege any discriminatory intent, and it does not identify any retaliation at all.

Plaintiff's Section 1981 claim fails because even the Complaint concedes that race was not a "but for" cause of any alleged action suffered by Plaintiff. Plaintiff's FMLA claims fail on multiple levels, including that a one day delay in being provided FMLA materials (never mind that PPGNY had already provided them just a week earlier) is not plausibly any sort of FMLA interference, but

most definitively because the Complaint concedes that PPGNY immediately granted Plaintiff's FMLA request on the same day she made it.

PPGNY respectfully submits that, having disposed of Plaintiff's federal claims, the Court should decline supplemental jurisdiction over the NYSHRL and NYCHRL claims. To the extent that the Court exercises supplemental jurisdiction over Plaintiff's state and city law claims, they nonetheless should be dismissed for failure to state a claim. ***First,*** the state and city law claims, like Plaintiff's federal claims, are based upon factual allegations that are time-barred. ***Second,*** the Complaint fails to plead that Plaintiff was treated less well than other similarly situated employees. ***Third,*** the Complaint does not plausibly assert that any action was caused by any given protected characteristic. ***Fourth,*** disagreements over scheduling and excessive work are not adverse employment actions under the NYSHRL or NYCHRL. ***Fifth***, the Complaint does not plausibly assert any retaliation on the part of PPGNY.

The Complaint simply lists each of Plaintiff's alleged protected characteristics, and asks the Court to connect them to any dissatisfactions or disagreements she had during her employment – be they time-barred comments from co-workers (not supervisors), disagreements over her schedule caused by her desire for a full time salary without working on Fridays, or having to wait a single business day for the FMLA information that PPGNY had provided only a week before, and for which such leave she was immediately approved.

Even the pled protected characteristics themselves betray the lack of plausible legal claims: Plaintiff pleads race discrimination and retaliation under every possible federal and state statute, but the Complaint makes no allegations related to race at all; Plaintiff pleads disability

discrimination, but the Complaint identifies no disability. The causes of action are procedurally prohibited and substantively insufficient, and for the reasons set forth below, PPGNY respectfully submits that the Complaint should be dismissed.

## II. FACTUAL BACKGROUND

Plaintiff's Complaint was filed on April 28, 2026, and her Summons is dated as executed on May 8, 2026. According to the Complaint, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 1, 2024, and received a Notice of Right to Sue from the EEOC on February 10, 2026. Comp. ¶¶ 5-6. The Complaint alleges that Plaintiff is a female survivor of domestic violence who practices Santeria. Comp. ¶ 8.

According to the Complaint, Plaintiff began working for PPGNY as a Paid Intern in January 2019, before being promoted to Administrative Associate in the Facilities Department in August 2019. Comp. ¶¶ 13-14. As alleged in the Complaint, Plaintiff had a "hybrid" working schedule in 2019 that allowed her to work remotely and balance childcare, as well as deal with domestic violence related issues in 2019. Comp. ¶ 16.

### Allegedly Discriminatory Comments From Co-Workers

The Complaint alleges that beginning between September 2019 and June 2023 Plaintiff's co-workers made comments that Plaintiff asserts were discriminatory based upon her sex, gender, domestic violence status, race and religion. Comp. ¶¶ 18-48. According to the Complaint, between February 2020 and May 2023, Plaintiff's co-workers Rene Martinez and Khemraj Tiwari made comments relating to her sex and gender (Comp. ¶¶ 18-37); that during this time Plaintiff's co-workers "mocked" Plaintiff's food being stolen (Comp. ¶¶ 40-43); and that Plaintiff suffered

"religion and race discrimination" between June 2022 and June 2023, which consisted of Mr. Martinez describing Santeria as "voodoo". Comp. ¶¶ 44-48. Although the comments regarding Santeria are titled "religion and race discrimination", the Complaint does not allege any comments about Plaintiff's race. Id. The Complaint does not assert that Plaintiff complained about any comments relating to her race, religion or domestic violence survivor status. The Complaint also does not allege that any of these co-workers were supervisors with the authority to affect the terms and conditions of Plaintiff's work.

**Plaintiff's Alleged Complaint About Comments Regarding Medical Assistants**

The Complaint then alleges that Plaintiff was blamed for invoices being processed incorrectly, and that in July 2023 she complained to Ms. Mille that Mr. Martinez was causing "confusion in my work". Plaintiff asserts that Ms. Mille dismissed her complaints about the confusion, and that, thereafter, she complained to both PPGNY and her union about Mr. Martinez's "inappropriate comments about medical assistants", specifically that "they have big butts and talked about sex". Comp. ¶¶ 49-58. Notably, the Complaint does not allege that Plaintiff complained to PPGNY or the union about any of the comments allegedly made to her in Paragraphs 18-48, but only regarding the way Mr. Martinez discussed medical assistants (which Plaintiff concededly was not). Id.

According to the Complaint, Plaintiff met with PPGNY and her union to discuss her alleged complaints about Mr. Martinez's comments regarding medical assistants, although the Complaint does not describe the result of this meeting. Comp. ¶ 58.

**Plaintiff's Scheduling Issues**

According to the Complaint, beginning in the Fall of 2023, Plaintiff was assigned "work outside of her work responsibilities" and began to have issues with her scheduling. Comp. ¶¶ 63-70. Examples include Plaintiff being required to use PTO when she stayed home during her daughter's Christmas break and did not have a working laptop. Id.

According to the Complaint, in February 2024 Plaintiff was given a promotion to Administrative Coordinator and a pay increase. Comp. ¶ 71. Although the Complaint at first describes the promotion and pay increase as a "pay decrease" (because one of the options Plaintiff was given to accommodate her schedule was to work fewer hours at a higher pay rate, Comp. Comp. ¶ 71), the Complaint then concedes that PPGNY offered to both maintain her full forty hour per week schedule and also give her an hourly pay increase (thus, of course, totaling a clear pay *increase*). However, Plaintiff was unhappy with this offer because she did not want to work "8.30 A.M. to 5 P.M. Monday through Friday" – *i.e.* full time PPGNY hours. Comp. ¶ 73. In other words, as the Complaint concedes, Plaintiff was offered a choice to either continue to work forty hours per week at an increased hourly rate (an offer she was not interested in because she did not want to work the full time schedule), or, in order to accommodate her schedule, only twenty two hours per week but still with an increased hourly rate. Comp. ¶¶ 71-73.

According to the Complaint, at some point Plaintiff filed a grievance with the union about her scheduling, with the result being that she was required to work in person three days per week, and to use PTO or FMLA leave for time away from her full-time schedule. Comp. ¶ 76.

**<u>Plaintiff's FMLA Requests</u>**

According to the Complaint, on April 26, 2024, Plaintiff asked PPGNY to provide FMLA paperwork, which PPGNY did. Comp. ¶ 78. Then, on May 1, 2024, Plaintiff again asked for FMLA paperwork regarding intermittent leave. Comp. ¶ 81. Although the Complaint asserts that PPGNY "did not provide Plaintiff with the requested paperwork" (Comp. ¶ 82), the Complaint concedes that PPGNY "finally" provided the paperwork on May 6, 2024. Comp. ¶ 85. Notably, however, (i) May 1, 2024 was a Wednesday and May 6, 2024 the following Monday; and (ii) according to the Complaint, Plaintiff did not show up for work on Friday May 3, 2024 (Comp. ¶ 84), meaning that according to the Complaint, only a single business day passed for Plaintiff between her requesting the FMLA documentation and receiving it.

The Complaint states that on June 3, 2024, Plaintiff requested intermittent FMLA leave and that PPGNY approved the leave "the same day". Comp. ¶¶ 88-89. The Complaint complains that PPGNY approved "only" an hour, although the Complaint does not assert how much was requested, what the FMLA certification approved, or what role PPGNY would have had in determining how much leave was approved. Comp. ¶ 89.

**Plaintiff's Resignation**

As set forth in the Complaint, on June 25, 2024, Plaintiff resigned.

## III. ARGUMENT

### A. Motion to Dismiss Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). While

not every detail of a Plaintiff's allegations must be alleged in the complaint, "a plaintiff must nonetheless assert 'more than labels and conclusions.'" Adams v. Equinox Holdings, Inc., No. 19-CV-8461(AJN), 2020 WL 5768921, at *2 (S.D.N.Y. Sept. 28, 2020) (quoting Iqbal, 556 U.S. at 678).

The factual allegations alleged in a complaint "must be enough to raise a right to relief above the speculative level." Iqbal, 556 U.S. at 678. And while a court must accept the factual allegations as true for the purposes of a motion to dismiss, a court is "not bound to accept as true a legal conclusion couched as a factual allegations", and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct…dismissal is appropriate." Starr v. Sony BMG Music Entertainment, 592 F.3d 314, 321 (2d Cir. 2010) (internal citations omitted).

**B. The Complaint Fails To State A Claim Under Title VII and the ADA (Counts Three, Four, Five and Six)**

Plaintiff fails to state a claim under Title VII and the ADA. Plaintiff's claims fail for procedural reasons: the allegations upon which Plaintiff's Title VII and ADA claims are predicated are time-barred; domestic violence victim status is not a protected class under federal law; Plaintiff' failed to administratively exhaust her ADA claims. However even on their own terms they fail to state a claim.

**ii. Plaintiff's Title VII and ADA Claims Are Time-Barred**

Plaintiff's Title VII and ADA claims are based on events more than 300 days before Plaintiff filed her Complaint with the EEOC, and accordingly those claims are time-barred.

It is well-settled that "[a]s a precondition to file a Title VII [or…ADA employment-discrimination] claim in federal court, a plaintiff must first pursue administrative remedies and file a timely complaint with the EEOC." Mitchell v. Planned Parenthood of Greater New York, Inc., 745 F. Supp.3d 68, 87 (S.D.N.Y. 2024) (citing to Hardaway v. Hartford Pub. Works Dep't, 879 F.3d 486, 489 (2d Cir. 2018) (Title VII) and Soules v. Conn. Dep't of Emergency Servs. & Pub. Prot., 882 F.3d 52, 57 (2d Cir. 2018) (ADA).

A plaintiff must file a charge within "300 days after the alleged unlawful employment practice occurred." Mitchell, at 87, citing to King v. Aramark Servs. Inc., 96 F.4th 546, 559 (2d Cir. 2024) (Title VII) and Purcell v. N.Y. Inst. Of Tech. – Coll. of Osteopathic Med., 931 F.3d 59, 63 n.16 (2d Cir. 2019) (ADA).

This "statutory requirement operates as a statute of limitations". Mitchell, at 87, citing to Banks v. Gen. Motors, LLC, 81 F.4th 242, 259 (2d Cir. 2023). Furthermore, because "a discrete discriminatory act is individually actionable and 'occurs' on the day it 'happened', the 300-day limitations period begins running on the day of each occurrence, meaning each discrete act claimed carries its own 300-day limitations period." Mitchell, at 87, citing to Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002). Although events may be used as "background evidence in support of a timely claim" (Morgan, 536 U.S. at 113), actual claims "concerning discrete acts outside this window will be time barred." Mitchell, at 87, citing to Buon v. Spindler, 65 F.4th 64, 77 (2d Cir. 2023).

Here, Plaintiff allegedly filed her EEOC charge on July 1, 2024. Comp. ¶5. Three hundred days before that is September 5, 2023. Therefore, any Title VII and ADA discrimination or retaliation claims premised on discrete acts occurring prior to September 5, 2023, are time-barred.

According to the Complaint, "Plaintiff began to experience discrimination" based upon her "sex/gender, race, religion, disability and/or perceived disability, and domestic violence victim status" in "September 2019". Comp. ¶5. The alleged discrete acts of sex and gender discrimination set forth in the Complaint are alleged to have occurred between "February 2020" and "May 2023". Comp. ¶¶ 18-38. Therefore, the claims for "sex and gender discrimination" are time-barred. Similarly, the discrete acts of alleged "domestic violence discrimination" occurred "in or around 2023" (Comp. ¶¶ 39-43); "race and religion discrimination" from "June 2022 until June 2023" (Comp. ¶¶ 44-48). Accordingly, all of Plaintiff's claims for discrimination under Title VII and the ADA are time-barred.

Plaintiff also asserts claims for "retaliation" occurring in July 2023. Comp. ¶¶ 49-54. As that too pre-dates September 5, 2023, her retaliation claims under Title VII and the ADA are similarly time-barred.

#### iii. Plaintiff's Title VII Claims Based On Plaintiff's Alleged Status As A Victim of Domestic Violence Fail As Title VII Does Not Recognize Such A Protected Class

Although the Complaint asserts discrimination and retaliation against Plaintiff under Title VII "on the basis of her…domestic violence victim status" (Comp. ¶¶120-123, Fifth and Sixth Causes of Action"), as the plain text of the statute itself makes clear, "being a survivor of domestic

violence…is not a protected class under Title VII". Taylor v. Children's Village, 2021 WL 1581568, *4 (S.D.N.Y. April 21, 2021), citing to 42 U.S.C. § 2000e-2(a).

### iv. Plaintiff's ADA Claim Must Be Dismissed For Want of Administrative Exhaustion

As "a precondition" to bringing an ADA claim in federal court, a plaintiff "must first pursue available administrative remedies and file a timely complaint with the EEOC". Mitchell v. Planned Parenthood of Greater New York, Inc., 2025 WL 1795378 (S.D.N.Y. June 30, 2025), citing to Hardaway v. Hartford Pub. Works Dep't., 879 F.3d 486, 489 (2d Cir. 2018). Although the Complaint references an EEOC charge, it does not attach a copy, nor describe the charge's contents. However, on a motion to dismiss, a court may consider the contents of any documents referenced in the complaint. Here, one such document is the EEOC charge filed by Plaintiff, a copy of which is attached as **Exhibit A**. A review of Plaintiff's EEOC charge shows no claim of disability, nor does the word 'disability' even appear therein. Accordingly, Plaintiff's claims under the ADA have not been exhausted and must be dismissed.

### v. Plaintiff's ADA Claim Fails To State A Claim As She Does Not Identify Any Qualifying Disability

In order to establish a *prima facie* case under the ADA, "the employee must demonstrate that", inter alia, "she was disabled within the meaning of the ADA…" Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001). Plaintiff fails to do so.

Pursuant to the ADA Amendments Act of 2008 (Pub. L. No. 110-325, 122 Stat. 3553 (2008)), "An individual meets the requirement of 'being regarded as having such an impairment' if

the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." Id. § 3(3).

The Complaint, however, does not identify any qualifying disability at all, actual or perceived. Plaintiff makes a vague reference to treatment for mental health. However, because Plaintiff "does not allege how [that] substantially limited a major life activity" and "does not allege any facts for the Court to determine whether she is disabled within the meaning of the ADA"; nor do the facts as plead suggest PPGNY "perceived" that Plaintiff had any disability within the meaning of the ADA, therefore "Plaintiff has not sufficiently alleged that [s]he was disabled under the ADA and her claims must be dismissed. Horsham v. Fresh Direct, 136 F.Supp.3d 253, 263-64 (E.D.N.Y. 2015)[1].

**vi. Plaintiff's Title VII Claims Fail To State A Claim**

Further, none of Plaintiff's claims under Title VII and the ADA "states a plausible claim for relief." Iqbal, 566 U.S. at 679.

**Plaintiff's Title VII Discrimination Claims**

Under Title VII, absent direct evidence of discrimination, what must plausibly be supported by facts alleged in the complaint is that the plaintiff: (1) is a member of a protected class; (2) was qualified; (3) suffered an adverse employment action; and (4) has at least minimal support for the

---

[1] Even specific assertions of mental health impairment do not qualify as disabilities under the ADA unless they substantially limit major life activities, never mind the general claim of "mental health" asserted by Plaintiff. See, e.g. Jacques v. DiMarzio, Inc., 200 F. Supp.2d 151, 159 (2d Cir. 2002), holding that undisputed "depression", "psychiatric treatment" and "anxiety" do "not suffice" to establish a prima facie case of disability under the ADA unless the complaint plausibly alleges the major life activities substantially limited by these claimed disabilities.

proposition that the employer was motivated by discriminatory intent. Buon, citing to Littlejohn v. City of New York, 795 F.3d 297, 311 (2d. Cir. 2015); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Defendant does not dispute herein that the Complaint pleads the first two elements. Elements (3) and (4), however, are not met.

**Lack of Adverse Employment Action**

The events described by the Complaint beginning in September 2023 are neither adverse actions, nor plausibly motivated by discriminatory intent. Rather, they amount to nothing more than her disagreement over scheduling, which she seemingly was attempting to negotiate in conjunction with her union representatives, complaining variously that she: was assigned "work outside of her regular responsibilities", such as interviewing "prospective employees"; was accused of being a "no call, no show" when she called out sick"; and being forced to take PTO when working from home when her laptop was broken; her problems with being scheduled to work between 8.30am and 5.30pm on Fridays because she had a "long standing mental health therapy appointment"; and her issues being disciplined for failing to show up to work, ultimately leading to her resignation. Comp. ¶¶ 59-93.

However, these kinds of disputes over scheduling and claims of being assigned work outside one's responsibilities are simply not adverse employment actions under Federal law. Even in the wake of the Supreme Court's decision in Muldrow, a Complaint must still plausibly allege a "disadvantageous change in the terms or conditions of the plaintiff's employment" rather than "some workplace events that are [merely] unpleasant." Mitchell II, at 91.

Further, the current posture in the Second Circuit is that Second Circuit precedent predating Muldrow is the applicable standard "outside the narrow situation of employee transfers", which this is not. Mcmunn v. Village of Quogue, 21-2805 (GRB)(ST), 2026 WL 1329672, *8 (E.D.N.Y. May 13, 2026), citing to Mathirampuzha v. Potter, 548 F.3d 70, 78 (2d Cir. 2008) for the applicable continuing standard for an adverse employment action, which must be "a change in working conditions…more disruptive than a mere inconvenience or an alteration of job responsibilities", which examples including "termination", "a demotion", "a decrease in wage or salary", "a less distinguished title", "a material loss of benefits" and the like. Id. No such material change in employment is plead in this case.

Even under Muldrow, "there is a distinction between a low bar [for an adverse action] and no bar at all." West v. City of Hartford, 818 F.Supp.3d 282, 299 (D. Conn. 2025). And a change in shift times "without a showing of harm" is not an adverse action. John v. Brooklyn Eye Center, 22-CV-06190 (OEM) (VMS) 2025 WL 317515, at *5 (E.D.N.Y. Jan 28, 2025). Here, Plaintiff alleges only that in attempting to negotiate her schedule with her union, she refused to work between 8.30am and 5.30pm (i.e. business hours) on Fridays. As such, PPGNY/the union offered her two alternatives: (1) she could work a part-time twenty two hour per week schedule with an increased hourly rate; or (2) she could work a full-time forty hours per week, also at the increased pay rate, but that would require her to work on Fridays. Comp. ¶¶ 71-73. That Plaintiff did not like these two options does not create an adverse action. Failing to accommodate a plaintiff's requests "is, by itself, not sufficient for establishing an adverse employment action, since the failure to accommodate must result in some other adverse employment action that materially alters the

employee's working conditions." Rosich v. La Salle Academy, 2025 WL 2410596, at *8 (S.D.N.Y. Aug 20, 2025). The Complaint does not set forth how PPGNY's failure to accommodate Plaintiff's impossible demand that she be given a full forty hour per week schedule, yet not work at all during business hours on Fridays, offset by a two hour work window outside of business hours on Friday evenings, resulted in some other adverse employment action that materially altered her working conditions.

Moreover, even courts in this jurisdiction applying the Muldrow standard have explicitly found that the scenario presented by Plaintiff does not constitute an adverse action. In Slater v. NYU Langone Health System, 2025 WL 2208292, at *7-8 (E.D.N.Y. Aug 4, 2025), the Plaintiff alleged that her employer required her "to work different hours to obtain her requested [disability] accommodation", and specifically that she requested that she be able to work outside of business hours. She alleged that the employer's refusal to acquiesce to this demand "impacted her ability" to attend classes and doctor's appointments". The Court nonetheless concluded that under the Muldrow standard "Plaintiff has not pleaded facts to support that she experienced some harm with respect to a term or condition of her employment". Even following Muldrow, the fact remains that "Courts have consistently held that a change in schedule, without more, is not an adverse employment action for purposes of a discrimination claim." Id. See, also, Kaufman v. New York Presbyterian Hosp., 762 F. Sup. 3d 309, 317 (S.D.N.Y. 2025) (explaining that a plaintiff cannot show that the denial of an accommodation qualifies as an adverse employment action under Muldrow).

Similarly, what Plaintiff describes as her "constructive discharge" (*i.e.* her resignation) on June 25, 2024 (Comp. ¶ 94), and which Plaintiff identifies as a subset of her Title VII claims, does not meet the requisite standard to avoid dismissal. A claim of "constructive discharge" may either be pled as an independent cause of action, or as the element of a separate discrimination claim. Noh v. Admarketplace, Inc., 2025 WL 965882 (S.D.N.Y. March 28, 2025). The Complaint appears to endeavor to do both, but fails on each count. As to the former, the standard is "higher" than a hostile work environment claim, and the Complaint fails to describe "offending behavior so severe and pervasive that is created an abusive working environment" or "that the environment was so intolerable that a reasonable person would have felt compelled to resign". Id., citing to Pennsylvania State Police v. Suders, 542 U.S. 129, 147 (2004). Here, Plaintiff purports to have been constructively discharged following months of disagreements over nothing more than scheduling. This falls far short of the exacting standard. (See, by way of comparison, cases in which much more egregious allegations were nonetheless deemed insufficient to support a constructive discharge claim, e.g. Tulino v. Ali, No. 15 Civ. 7106 (JSR), 2019 WL 1447134, at *2 (S.D.N.Y. Feb 27, 2019) (no constructive discharge claim where plaintiff resigned after defendant told her that employees were expected to engage in sexual activity to advance professionally, repeatedly physically touched her against her will).

Further, while the Complaint references various purportedly offensive comments, none are pled within the year preceding her resignation, thus requiring dismissal of the claim. See, e.g. Noh, at *6, (claim dismissed for failure to meet second prong of the analysis as the offensive or harassing conduct was "not alleged to have continued" in the month preceding the termination).

To prove adverse employment action based upon constructive discharge a "plaintiff must show that rather than discharging her directly, her employer intentionally created a work atmosphere so intolerable that she was forced to quit involuntarily." Noh, citing to Terry v. Ashcroft, 336 F.3d 128, 151-52 (2d Cir. 2003). As was the case in Noh, Plaintiff pleads nothing more than that she "resigned simply because she was not allowed to work from home", a request she made as she felt "unsafe". Noh, at *8. In Noh, the plaintiff's fear was allegedly caused by her coworker – in this case, the fear was allegedly by her former partner, who has nothing to do with PPGNY. As in Noh, an employer demanding that an employee work in person rather than remotely, or providing a schedule that the employee dislikes, is insufficient to set forth an adverse employment action: simply put, "being required to return to the office [does] not constitute an adverse employment action." Noh, at *8.

**Lack of Discriminatory Intent**

Certainly, however, the Complaint fails to provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent based on Plaintiff's race, color, sex or religion as required by Title VII" (Mitchell, at 91) or that Plaintiff's [alleged] disability was a but-for cause of an adverse employment action taken against [her] as required by…the ADA" (Mitchell, at 92). At base, "naked assertions of discrimination without any specific allegation of a causal link between the defendants' conduct and the plaintiff's membership in a protected class, are too conclusory to withstand a motion to dismiss." Williams v. Westchester Med. Ctr. Health Network, No. 21-cv-03746 (KMK), 2024 WL 990153, at *9 (S.D.N.Y. Mar. 7, 2024). A plaintiff may "demonstrate circumstances giving rise to an inference of discrimination by alleging that he

was treated less favorably than similarly situated employees." Brown v. Daikin Am. Inc., 756 F.2d 219, 229 (2d Cir. 2014). The Complaint does not try to do so.

And while the Complaint sets forth various comments that Plaintiff asserts show race, gender, sex, disability and religion discrimination, (a) those incidents are time-barred and too distant from Plaintiff's alleged adverse action (see, Lively, 6 F.4th at 306-207 ("stray remarks are rarely given great weight, particular if they were made temporally remote from the date of the" adverse employment action")); (b) the Complaint does not plausibly assert that any of the individuals alleged to have made these comments had any control over the terms and conditions of Plaintiff's employment (Id,.at 307 "remarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision maker was motivated by the discriminatory sentiment expressed in the remark"; see, also, e.g .Lee v. Grocery Haulers, Inc., No. 22-680, 2023 WL 8253089, at*1 (2d Cir. Nov. 29, 2023)); and (c) the Complaint does not plausibly connect those comments to any material change in Plaintiff's terms or conditions of employment (Abada v Delta Air Lines, Inc., No. 21-123, 2022 WL 894704, at *2 (2d. Cir. Mar. 28, 2022) ("allegations are insufficient to state a claim because they are without any link the adverse employment action…").

In sum, "mistreatment at work is actionable under Title VII only when it occurs *because of* an employee's protected characteristic". Mitchell, at 95-96, quoting Farooq v. City of New York, No. 20-3185, 2022 WL 793117, at *3 (2d Cir. Mar. 16, 2022) (emphasis added). Where a plaintiff "fails to tie" the alleged adverse employment action (here, her purported disputes over scheduling and job responsibilities) to the protected characteristic, the claims fail. Mitchell, at 96. Because

Plaintiff "fails to allege facts providing at least minimal support for the proposition that" PPGNY "in taking any adverse action against Plaintiff during the" 300 day filing window "was motivated by discriminatory intent based on Plaintiff's race, color, sex or religion, or that Plaintiff's…disability was a but-for cause of any adverse employment action" her claims under Title VII and the ADA must be dismissed. Mitchell, at 97.

**Lack of Retaliation**

Plaintiff's claims of retaliation under Title VII and the ADA fail for the same reasons. See, Mitchell, at 100, holding that "to adequately plead causation under the retaliation provisions of Title VII and the ADA, the plaintiff must plausibly allege that the retaliation was a but-for cause of the employer's adverse action." A plaintiff may show this "by direct evidence of retaliatory animus or inferred through temporal evidence to the protected activity." Mitchell, at 100, quoting Duplan,888 F.3d at 625. Here, the Complaint offers neither: at most, the Complaint suggests an ongoing dispute between Plaintiff and either PPGNY or Plaintiff's union over her work schedule taking place over several months, well after any alleged discriminatory remarks, and not involving the individuals alleged to have made such remarks. Plaintiff's assertion that she complained about the allegedly offensive comments in July 2023 (Comp. ¶ 52) does not suffice to save her claim as the "passage of approximately six months between protected activity and adverse employment action, without more, [does] not permit an inference of causation." Mitchell II, at *15, citing to Gonzalez v. City of New York, 377 F. Supp. 3d 273, 291 (S.D.N.Y. 2019) and Kirkland-Hudson v. Mount Vernon City Sch. Distr., 665 F. Supp. 3d 412, 464 (S.D.N.Y. 2023). As such, all

Plaintiff's claims under Title VII and the ADA for discrimination and retaliation should be dismissed.

### C. The Complaint Fails To State A Claim Under Section 1981 (Count One)

For similar reasons – lack of an adverse employment action, lack of discriminatory intent – Plaintiff fails to state a claim under Section 1981. However, the Court's analysis need not reach that far. To state a claim for discrimination under Section 1981, a plaintiff must "plead and ultimately prove that, but for race, she would not have suffered the loss" alleged. Comcast Corp. v. Nat'l Ass'n of Afr. AM.-Owned Media, 589 U.S. 327, 341 (2020). Retaliation claims under Section 1981 are "subject to the same standards". Banks, 81 F.4th at 275. Here, the Complaint does not plausibly allege that race was the "but for" cause of any alleged adverse action. In fact, under the section of the Complaint titled "Religion and Race Discrimination", there is no mention of race at all. In fact, nowhere in the Complaint does Plaintiff so much as assert what race she purports to identify as, still less offer any facts to support a claim that race was the "but for" cause of any adverse action pled. Accordingly, her claims for discrimination and retaliation under Section 1981 should be dismissed.

### D. Plaintiff's FMLA Interference Claims Fail (Count Two)

Plaintiff's claim for FMLA interference and retaliation (Second Cause of Action) should also be dismissed. As an initial matter, the Complaint fails to plead that, *inter alia*, Plaintiff "was entitled to take leave under the FMLA" in the first place, thus warranting dismissal. Martinez v. Staten Island University Hospital, 814 F.Supp.3d 380, 415 (E.D.N.Y. 2026). An eligible employee is entitled to FMLA leave, inter alia, "to care for the spouse, or a son, daughter, or parent,

of the employee, if such spouse, son, daughter, or parent has a serious health condition…" 29. U.S.C. § 2612(a)(1), as well as due to the birth of a child, the placement of a child into adoption or foster care, "because of a serious health condition that makes the employee unable to perform the functions of the position of such employee", because a family member is on covered active military duty, or because of a public health emergency. Id. The Complaint asserts none of these qualifying conditions and, in fact, asserts that Plaintiff was using her FMLA leave for a longstanding mental health appointment. Comp. ¶ 88-90. ("Plaintiff requested intermittent FMLA leave for her mental health…"). The Complaint does not assert that Plaintiff's "mental health" prevented her from doing her job. Nor does it assert that her unspecified "mental health" condition required either "inpatient care" or that, in the absence of her ongoing mental health treatment Plaintiff's alleged "condition" "would likely result in a period of incapacity for more than three consecutive, full calendar days…" 29 C.F.R. § 825.115(e). As such, Plaintiff did not qualify for FMLA leave in the first place.

***Second***, FMLA interference is limited to situations where the employee "was denied benefits to which she was entitled". Graziadio v. Culinary Institute of America, 817 F.2d 415, 424 (2d Cir. 2016). Here, the Complaint asserts that Plaintiff was immediately approved for FMLA leave by PPGNY on the very "same day" she requested it. Comp. ¶¶ 88-89[2].

[2] The Complaint does assert that Plaintiff was "only" granted one hour of FMLA per week, but does not assert how much she requested, how much she believed she was entitled to, or how PPGNY had any role in determining how much FMLA leave she be approved for. Comp. ¶ 89. In any event, the statute itself makes clear that the amount of intermittent leave approved for FMLA coverage is based upon the "treatment regimen and other information described in the certification….", not the choice of the employer, and such approval may range "from an hour to several weeks". 29 C.F.R. § 825.202.

***Third***, Plaintiff's FMLA interference claims are time-barred. Absent a showing of willful interference (no such showing exists in the Complaint and, as noted above, PPGNY immediately approved Plaintiff for FMLA leave), FMLA interference claims are subject to a two-year statute of limitations. See, Porter v. New York University School of Law, 392 F.3d 530, 531 (2d Cir. 2004); see, 29 U.S.C. § 2617(c)(1). Here, Plaintiff's Summons was executed on May 8, 2026. According to the Complaint, her efforts to secure FMLA leave occurred between April 26, 2024 and May 6, 2024. Comp. ¶¶ 78-86. No allegations related to FMLA occurred after May 6, until she applied for – and was immediately approved for – FMLA on June 3, 2024. Because any and all allegations of FMLA interference end on May 6, 2024, *i.e.* before the May 8, 2026 statutory deadline, Plaintiff's claims of FMLA interference are time-barred.

Notwithstanding the foregoing, Plaintiff in any case fails to state a claim for FMLA interference. The Complaint alleges nothing more than that on April 26, 2024, Plaintiff for the first time requested FMLA documentation, which PPGNY immediately provided, and that on May 1, 2024, Plaintiff once again asked for FMLA documentation. Comp. ¶ 78-81. Plaintiff asserts that PPGNY "did not provide Plaintiff with the requested paperwork" (Comp. ¶ 82), but then immediately concedes that "*finally*" (emphasis in Complaint") PPGNY did so on May 6, 2024, five days after her request and 8 days after PPGNY previously provided the paperwork. Comp. ¶ 85. This alone does not make for an FMLA interference claim for an employee who was ultimately granted her leave the same day that she requested it. Rendering this assertion even weaker: (i) May 1, 2024, was a Wednesday, with May 6, 2024, the following Monday; and (ii) according to the Complaint, Plaintiff did not show up to work on Friday May 3, 2024. Comp. ¶ 84. This means

that only a single business day passed for Plaintiff between her request for paperwork and her "*finally*" receiving it from PPGNY.

In other words, the entirety of Plaintiff's FMLA interference claim consists of her time-barred assertion that although PPGNY promptly provided her with FMLA paperwork on April 26, 2024, and that when she asked for the paperwork again five days later, it took PPGNY a whole business day to provide her with the materials for the second time in about one week. Incredibly, the Complaint concedes that when Plaintiff asked PPGNY for "intermittent FMLA leave" on or around June 3, 2024, PPGNY approved the leave that very same day. Comp. ¶¶ 88-99. A claim for FMLA interference requires that a plaintiff be "denied benefits to which she was entitled under the FMLA". Haran v. Orange Business Services, Inc., 160 F.4th 51, 57 (2d Cir. 2025). The Complaint fails to identify any FMLA benefits to which Plaintiff was either entitled, or denied, and fails to identify how PPGNY "prevented or otherwise impeded [Plaintiff's] ability to exercise her rights under the FMLA" and therefore her claim for FMLA interference should be dismissed. Islam v. Steiner, 24 Civ. 10064 (DH), 2026 WL 589600, at *5 (S.D.N.Y. Mar 2, 2026). See, e.g. Jordan v. County of Chemung, 264 F. Supp.3d 497, 506 (W.D.N.Y. 2017) (where plaintiff admitted in her pleadings that her "FMLA request was accepted and approved…Plaintiff has failed to identify any denial of FMLA benefits, and her interference claim fails as a matter of law.")

**E. Plaintiff's FMLA Retaliation Claims Fail**

Plaintiff's FMLA retaliation claims also fail to state a claim. FMLA retaliation claims are evaluated under the McDonnell-Douglas burden shifting analysis, and thus require that a plaintiff suffer "an adverse employment action" and that the "adverse employment action occurred under

circumstances giving rise to an inference of retaliatory intent". Islam, at *5. Plaintiff suffered no adverse action (as the Complaint concedes, she resigned), and, while the Complaint describes Plaintiff's resignation as "constructive termination" it makes no sense that Plaintiff's resignation (even assuming arguendo that it was constructive termination) could give rise to any inference of retaliatory intent given that according to the Complaint (a) PPGNY approved Plaintiff's FMLA the very same day she requested it, just 3 weeks prior to her resignation; and (b) Plaintiff's issues relating to scheduling pre-dated her approved FMLA by several months.

Further, as set forth above, Plaintiff suffered no adverse action. Her claimed 'constructive termination' does not meet the "demanding standard" (Gingold v. Bon Secours Charity Health System., 768 F.Supp.2d 537, 545 (S.D.N.Y. 2011) and the Complaint identifies no other adverse action in connection with Plaintiff's FMLA claims. Accordingly, the FMLA retaliation claim should be dismissed.

**F. Supplemental Jurisdiction**

Pursuant to 28 U.S.C. § 1367(c) "district courts may decline to exercise supplemental jurisdiction over a [state law claim] if the district court has dismissed all claims over which it has original jurisdiction…"

While the rule is "permissive, rather than mandatory" (Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003)), the longstanding practice of declining jurisdiction over state law claims is "the recommended procedure…in cases where the federal claim is disposed of prior to trial" (Federman v. Empire Fire and Marine Ins. Co., 597 F.2d 798, 809 (2d Cir. 1979)) and "the balance

of factors ordinarily will point toward declining jurisdiction over the remaining state-law claims." Budhan v. Brightworks Sustainability LLC, 2025 WL 919926, at *8 (S.D.N.Y. March 26, 2025).

In this case, the remaining state law claims would not implicate the doctrine of preemption, nor would they be "closely tied to questions of federal policy", and "judicial economy, convenience, fairness, and comity" lean in favor the Court declining jurisdiction over Counts Seven, Eight, Nine and Ten (the state and city law claims) if Counts One through Six (the federal claims) have been dismissed. Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998). "In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well". Id, citing to Purgess v. Sharrock, 33 F.3d 134, 138 (2d Cir. 1994).

As such, to the extent that the Court grants PPGNY's motion to dismiss Counts One through Six, PPGNY respectfully submits that the Court should decline supplemental jurisdiction over Counts Seven through Ten.

### G. The Complaint Fails To State A Claim Under the NYSHRL and NYCHRL (Counts Seven, Eight, Nine and Ten)

To the extent that the Court retains jurisdiction over Counts Seven through Ten, for discrimination and retaliation under the NYSHRL and NYCHRL, the Complaint fails to state a claim for those causes of action also.

***First,*** again, many of the alleged acts of discrimination are time-barred under the NYSHRL and NYCHRL. "Claims under the NYSHRL and the NYCHRL are time-barred unless filed within three years of the alleged discriminatory acts." Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 238 (2d Cir. 2007). Here, the Summons was executed on May 8, 2026. Accordingly, any

allegations prior to May 8, 2023, are time-barred. The allegations titled "Sex/Gender Discrimination" are dated between "February 2020" and "May 2023". Comp. ¶¶ 18-37. Accordingly, those claims are time-barred. Similarly, the allegations titled "Domestic Violence Discrimination" and "Religion and Race Discrimination" do not allege any incidents after May 2023, and, as such, they are time-barred.

***Second***, the Complaint fails to state a claim under either the NYCHRL or NYSHRL because she fails to plead that she was treated less well than other employees. "Even under the more lenient requirements of the NYCHRL, a plaintiff's claims must be more than conclusory or speculative to survive a motion to dismiss." Ward v. Cohen Media Publ'ns LLC, No. 22-cv-06431 (JLR), 2023 WL 5353342, at *15 (S.D.N.Y. Aug 21, 2023). In order to state a claim for discrimination under the NYCHRL a plaintiff must allege, inter alia, that she was "treated less well than other employees". Okeke v. Interfaith Med. Ctr., 205 N.Y.S.3d 189, 191 (2024). The standard for an NYSHRL is "now largely the same". Mitchell, at 107. If there is no direct evidence of the employer's discriminatory intent, then the Plaintiff must show that she has been treated less favorably than a similarly situated employee outside her protected class. Soloviev v. Goldstein, 104 F. Supp. 3d 232, 248 (E.D.N.Y. 2015). See, also, Russo v. New York Presbyterian Hosp., 972 F. Supp.2d 429, 450 (E.D.N.Y. 2013) (the plaintiff must show "differential treatment – that she is treated less well – because of a discriminatory intent"). The Complaint fails to provide any comparators at all, still less any materially similar to Plaintiff but who received preferential treatment.

***Third,*** the Complaint does not plausibly allege that any of the conduct described in the Complaint was plausibly caused "at least in part because of" any protected characteristic. Mitchell, 104, quoting Williams v. N.Y.C. Hous. Auth., 872 N.Y.S.2d 27, 40 (2009). The "NYCHRL is not a general civility code, and a plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive". Id. For substantially similar reasons as set forth regarding Plaintiff's claims under Title VII and the ADA, Plaintiff fails to do so. The sections of the Complaint entitled "discrimination" in various forms involve individuals Rene Martinez, Khemraj Tiwari, Michael Freidman, and Jennifer Mille, occurring between February 2020 and May 2023. Comp. ¶¶18-48. The only adverse action alleged by Plaintiff is her resignation which occurred over a year later, after months of scheduling disagreements that Plaintiff was negotiating with her Union representatives. The Complaint does not assert that Mr. Martinez, Mr. Tiwari, Mr. Friedman or Ms. Mille had any role in her scheduling disputes nor her resignation. "Naked assertions of discrimination without any specific factual allegation of a causal link between the defendant's conduct and the plaintiff's protected characteristic are too conclusory to withstand a motion to dismiss". Soloviev, at 249, quoting Doe v. Columbia Univ., 14-CV-3573, 2015 WL 1840402, at *7 (S.D.N.Y. 2015). In sum, just as with the Title VII and ADA claims, because the Complaint does not tie any alleged discriminatory comments to any alleged adverse action, she fails to state a claim for discrimination under the NYCHRL or NYSHRL.

***Fourth,*** the scheduling disputes and extra responsibilities beyond her prior job description as described by Plaintiff are not adverse actions under the NYCHRL or NYSHRL. As has long been held "under both the New York State and New York City Human Rights Laws…neither

unfavorable schedules or work assignments, nor excessive work, nor a supervisor's general negative treatment are material adverse changes in the terms, conditions or privileges of employment" such as would sustain an employment discrimination claim. Parker v. Metropolitan Transp. Auth. 2007 WL 2962737, at *3 (Sup. Ct. Kings Cnty, Sept 21, 2007), citing to Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 313 (2004); see, also, Forrest at 307 ("excessive work [is not a] materially adverse change in the terms, conditions or privileges of employment" to sustain a claim of discrimination); Grant v. N.Y. State Office for People with Developmental Disabilities, 2013 WL 3973168, at *7 (E.D.N.Y. July 30, 2013) (dismissing complaint because the "only adverse employment action that plaintiff alleges…was his assignment to more onerous work assignments…"); Siroy v. Jobson Healthcare Information LLC, 2019 WL 1598021, at *6 (D. N.J. April 15, 2019) (applying New York law and holding that "although the burden of presenting a prima facie case is a minimal one, to be materially adverse, a change in working conditions must be more than…an alteration of job responsibilities" and neither a change in responsibilities or excessive work "constitute an adverse action as defined by law.")[3]

***Fifth,*** Plaintiff fails to state a claim of NYSHRL or NYCHRL retaliation, because the Complaint does not assert any retaliatory conduct on the part of PPGNY in connection with Plaintiff's resignation. Although Plaintiff describes her resignation as "constructive discharge",

[3] As noted supra, at one stage the Complaint states that PPGNY attempted to accommodate her various scheduling needs with a reduced schedule of twenty-two hours per week and an hourly pay increase. Comp. ¶ 71. Plaintiff asserts that because of the reduced hours, this would have been a "a pay decrease". Id. However, as the Complaint itself concedes, (a) PPGNY was merely trying to accommodate Plaintiff's own scheduling difficulties; and (b) PPGNY in fact gave Plaintiff a choice that would have allowed her to keep the hourly pay increase *and* her forty-hour per week schedule. Comp. ¶ 73. Plaintiff's issue is that she did not want to accept this proposed schedule and pay increase, because it required her to work "from 8.30 A.M. to 5 P.M. Monday through Friday". Id. Unquestionably, Plaintiff was not forced to take a decrease in pay, her issue was solely with regards to scheduling, which is not an adverse employment action. Comp. ¶ 75.

"without an actionable hostile work environment claim, [a] plaintiff's constructive discharge claim must also fail." Ferraro v. Kellwood Co., 440 F.3d 96 (2d Cir. 2006).

## IV. CONCLUSION

WHEREFORE, it is respectfully requested that this Court grant Defendant's Motion to Dismiss the Complaint dismissing all claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and that this Court grant Defendant such other and further relief as this Court deems just and proper.

Dated: June 30, 2026
White Plains, NY

**KAUFMAN DOLOWICH, LLP**

Charles B. Bergin
245 Main Street, Suite 330
White Plains, New York 10601
cbergin@kaufmandolowich.com

CC: All Counsel via ECF

**SOUTHERN DISTRICT OF NEW YORK**
**PRINTING SPECIFICATIONS STATEMENT**

I hereby certify pursuant to the Individual Rules of Practice in Civil Cases for Judge Arun Subramanian that the foregoing documents were prepared on a computer using Microsoft Word.

Type. A Monospaced typeface was used, as follows:

Name of typeface: Times New Roman
Point Size: 12
Line Spacing: Double

Word Count. The total number of words in this Memorandum of Law, inclusive of point headings and footnotes and exclusive of pages containing a table of citations, proof of service, the caption and this Statement is: 8,453.

Dated: White Plains, New York
June 30, 2026

KAUFMAN DOLOWICH LLP
*Attorneys for Defendant*

By: ______________________________

Charles B. Bergin
245 Main Street, Suite 330
White Plains, New York 10601
(914) 470-0001
cbergin@kaufmandolowich.com

Non-Argumentative Chart Pursuant to Judge Subramanian Individual Rule 8.G.(i)

In accordance with the Court's Individual Rules of Practice, Rule 8.G.(i) Defendant PPGNY set forth below a non-argumentative chart identifying the elements not plausibly alleged.

The below chart sets forth only elements not plausibly pled in the Complaint and does not include other bases for dismissal pursuant to Rule 12(b)(6), such as, e.g. a cause of action being time-barred.

| I | II |
|---|---|
| CAUSES OF ACTION | ELEMENTS NOT PLEAD |
| First: Under Section 1981 | (i) No adverse employment action;<br>(ii) No discriminatory intent<br>(iii) Race not plead as "but for" cause of any alleged discrimination, retaliation or discharge |
| Second: Retaliation and Interference under FMLA | (i) No entitlement to FMLA leave;<br>(ii) No denial of benefits to which she was entitled;<br>(iii) No prevention or impeding of Plaintiff's rights;<br>(iv) No inference of retaliatory intent;<br>(v) No adverse employment action |
| Third: ADA discrimination | (i) No qualifying disability<br>(ii) No administrative exhaustion;<br>(iii) No adverse employment action;<br>(iv) No discriminatory intent; |
| Fourth: ADA retaliation | (i) No "but-for" cause of the alleged adverse action;<br>(ii) No adverse action;<br>(iii) No retaliatory animus;<br>(iv) No qualifying disability |
| Fifth: Title VII discrimination | (i) No adverse employment action;<br>(ii) No discriminatory intent;<br>(iii) No protected class (victim of domestic violence) |
| Sixth: Title VII retaliation | (i) No "but-for" cause of the alleged adverse action;<br>(ii) No adverse action;<br>(iii) No retaliatory animus |

| | |
|---|---|
| Seventh: Discrimination under the NYSHRL | (i) No pleading that Plaintiff was treated less well than similarly situated coworkers;<br>(ii) No direct evidence of discriminatory intent;<br>(iii) No pleading that any conduct was caused "at least in part" by/causal link with, any protected characteristic;<br>(iv) No adverse action |
| Eighth: Retaliation in violation of the NYSHRL | (i) No pleading that Plaintiff was treated less well than similarly situated coworkers;<br>(ii) No direct evidence of discriminatory intent;<br>(iii) No pleading that any conduct was caused "at least in part" by/causal link with, any protected characteristic;<br>(iv) No adverse action;<br>(v) No retaliatory conduct. |
| Ninth: Discrimination in violation of the NYCHRL | (i) No pleading that Plaintiff was treated less well than similarly situated coworkers;<br>(ii) No direct evidence of discriminatory intent;<br>(iii) No pleading that any conduct was caused "at least in part" by/causal link with, any protected characteristic;<br>(iv) No adverse action |
| Tenth: Retaliation in violation of the NYCHRL | (i) No pleading that Plaintiff was treated less well than similarly situated coworkers;<br>(ii) No direct evidence of discriminatory intent;<br>(iii) No pleading that any conduct was caused "at least in part" by/causal link with, any protected characteristic;<br>(iv) No adverse action;<br>(v) No retaliatory conduct. |