UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X Case No.: 26-cv-3504
SHADAY DELGADO,

Plaintiff,

-against-

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

PLANNED PARENTHOOD OF GREATER NEW YORK, INC.,

Plaintiff Demands a Trial by Jury

Defendant.
--------------------------------------------------------------X

Formatted: Centered

Plaintiff, by and through her attorneys, Phillips & Associates, PLLC, hereby complains of the Defendant, upon information and belief, as follows:

**NATURE OF THE CASE**

1. Plaintiff complains pursuant to the Family Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA"), the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § 2000e *et seq*. ("Title VII"), 42 U.S.C. §1981, and to remedy violations of the New York State Executive Law as well as the Administrative Code of the City of New York, based on the supplemental jurisdiction of this Court pursuant to *Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. § 1367, seeking damages to redress the injuries that Plaintiff has suffered as a result of being discriminated against by the Defendant on the basis of her sex/gender, race, religion (Santeria), as well as domestic violence victim status, actual and/or perceived disabilities, together with creating a hostile work environment, retaliation and constructive discharge.

**JURISDICTION AND VENUE**

2. The Court has jurisdiction pursuant to 29 U.S.C. § 2601, *et seq.*; 42 U.S.C. § 12101, *et seq.;* 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1981; 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction thereto.
3. This action involves a Question of Federal Law.
4. Venue is proper in this district based upon the fact that a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of the State of New York. 28 U.S.C. §1391(b).
5. On or about July 1, 2024, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").
6. On or about February 10, 2026, Plaintiff received a Notice of Right to Sue letter from the EEOC.
7. This action was commenced within ninety (90) days of said Notice of Right to Sue.

**PARTIES**

8. Plaintiff is a Puerto Rican-/Hispanic female resident of the State of New York, County of Kings, practices ~~the~~ Santeria ~~religion~~, ~~and~~ is a survivor of domestic violence, and is diagnosed with complex Posttraumatic Stress Disorder, Major Depressive Disorder, and Generalized Anxiety.
9. At all times material, Defendant PLANNED PARENTHOOD OF GREATER NEW YORK INC. ("PLANNED PARENTHOOD") was and is a domestic not-for-profit corporation duly incorporated under the laws of the State of New York.
10. At all times material, Defendant PLANNED PARENTHOOD was and is a qualified employer under the FMLA and employed at least 50 employees within a 75-mile radius of the location

at which Plaintiff worked.

11. At all times material, Plaintiff was a qualified employee under the FMLA in that she worked at least 1,250 hours during the 12-month period immediately preceding her request for leave.

12. At all times material, Plaintiff was an employee of Defendant PLANNED PARENTHOOD.

**MATERIAL FACTS**

13. In or around January 2019, Plaintiff began working for Defendant PLANNED PARENTHOOD as a paid Intern.

14. Then, in or around August 2019, Plaintiff was hired as an Administrative Associate in the Facilities Department and earned $24.79 per hour.

15. Because she is a survivor of domestic violence, Vice President of Facilities, Jennifer Mille, allowed Plaintiff to work a "flexible hybrid schedule," which allowed her to arrive late and/or work remotely when she was dealing with domestic violence issues. This included her need to speak with attorneys, apply for social services, and/or go to the police station.

16. Plaintiff also requested a reasonable accommodation to have Friday mornings off to attend therapy sessions for her Posttraumatic Stress Disorder, Major Depressive Disorder, and Generalized Anxiety disorder, which was granted.

~~15.~~17. As a result, ~~To that end,~~ throughout her employment, Plaintiff regularly worked remotely on Mondays and Wednesdays from 8:30 A.M.- to 1:30 P.M., signed off due to her childcare responsibilities, and logged back on from 5:00 P.M. to 7:30 P.M. On Tuesdays and Thursdays, Plaintiff worked on-site from 8:30 A.M. to 1:30 P.M., left due to her childcare responsibilities, and logged back on from her residence, from 5:00 P.M. to 7:00 P.M. Finally, on Fridays, Plaintiff attended mental health therapy sessions, as well as cared for her daughter, and only worked remotely from 5:00 P.M. to 7:00 P.M.

~~16.~~18. In or around September 2019, Plaintiff began to experience discrimination while working at Defendant PLANNED PARENTHOOD based on her sex/gender, race, religion, disability and/or perceived disability, and domestic violence victim status.

***Sex/Gender Discrimination***

~~17.~~19. On a regular and consistent basis throughout her employment, Plaintiff was referred to by Defendant PLANNED PARENTHOOD's Management as "Girl" and told, "You don't know what you're talking about."

~~18.~~20. At the same time, on a regular and consistent basis, Region 1 Facilities Manager, Rene Martinez, made gender-stereotyped comments to Plaintiff such as, "Just focus on being a receptionist and Secretary."

~~19.~~21. Similarly, in or around February 2020, during a conversation about building construction, Mr. Martinez mocked Plaintiff due to her gender and stated, "**What do *you* know**? **Now all the sudden** [**Plaintiff**] **knows how to paint and put sheetrock up** … **Look guys, isn't that cute of her**?"

~~20.~~22. Then, after the COVID-19 pandemic began, Defendant PLANNED PARENTHOOD switched to full-time remote work and Mr. Martinez started making comments about Plaintiff's appearance during Zoom calls.

~~21.~~23. Specifically, Mr. Martinez routinely denigrated how Plaintiff looked on camera and regularly said that it looked like she "rolled out of bed" and was not ready to work. Notably, Mr. Martinez never made such comments about Plaintiff's male coworkers.

~~22.~~24. On another occasion, in or around 2020, Mr. Martinez told Plaintiff that she needed to "**Stick to being pretty and staying on the computer**."

~~23.~~25. Then, in or around 2021, Defendant PLANNED PARENTHOOD hired Khemraj Tiwari as

its Vice President for Facilities and Security.

24.26. Similar to Mr. Martinez, Mr. Tiwari regularly discriminated against Plaintiff on the basis of her sex/gender.

25.27. For instance, in or around 2021, Plaintiff told Mr. Tiwari that she attended Stonybrook University for her Bachelor's Degree. Mr. Tiwari responded, "**I know a thing or two about the girls from Stony Brook and how they *get down* after hours**." Plaintiff was uncomfortable and did not respond.

26.28. Additionally, Mr. Martinez continued making his own discriminatory comments.

27.29. To that end, on a number of occasions, Mr. Martinez told Plaintiff that Defendant PLANNED PARENTHOOD's Medical Assistants had "**Fat asses** in their scrubs."

28.30. Similarly, Mr. Martinez routinely told Plaintiff that she looked "**Shapely**" in her clothing and, "**Your ass looks fat**."

29.31. Eventually, in or around April 2022, Plaintiff complained to Ms. Mille, that Mr. Martinez made her uncomfortable because he regularly made comments about her appearance and gender. Ms. Mille dismissed Plaintiff's complaints and said, "[Mr. Martinez] is just playing." Plaintiff replied, "No, he's making me uncomfortable with these comments." Incredulously, Ms. Mille replied, "**As a woman in Facilities**, **you're going to deal with these things**. **You have to grow a thick skin**."

30.32. Later, during the same conversation, Ms. Mille explained that when she first started working for Defendant PLANNED PARENTHOOD in the Facilities Department, her male coworkers told her that if she wore a dress that she could not work because she was a girl. Eventually, the meeting ended when Ms. Mille told Plaintiff that *she* would have to speak with Mr. Martinez if she was uncomfortable.

~~31.~~33. Then, in or around June 2022, Mr. Martinez told Plaintiff, "**The Facilities Department is man's work**" and that Plaintiff was only hired to be on a computer.

~~32.~~34. On other occasions, in an attempt to create a pretextual paper trail for Plaintiff's eventual termination, Mr. Martinez emailed Plaintiff, "Where are you?" when she stepped away from her desk. When Plaintiff returned to her desk and replied asking what he needed, Mr. Martinez regularly replied that he was "Better" than Plaintiff.

~~33.~~35. Despite her complaint to Ms. Mille, Mr. Martinez' sexual comments continued unabated in the workplace.

~~34.~~36. To that end, on or about February 16, 2023, Mr. Martinez told Plaintiff that her coworker, Amberlynn (last name currently unknown), must have been named after her father's "**Favorite porn star**."

~~35.~~37. On other occasions, Mr. Martinez told Plaintiff, "Stop busting **my balls**."

38. Thereafter, in or around May 2023, Plaintiff again complained to Ms. Mille about Mr. Martinez' harassment. Ms. Mille told Plaintiff, "[Maintenance Tech] Juan (last name currently unknown) and **Mr. Martinez' wives are stay at home wives**, **you're Puerto Rican just like them**, **in their minds because their wives are stay at home wives and Hispanic**, **they expect you to do the same**." Plaintiff objected to Ms. Mille's characterization and said, "I'm having a hard time wrapping around my head why they think like that." Ms. Mille then put the onus on Plaintiff and said that she (Plaintiff) needed to prove to Mr. Martinez that she "belonged" in the Facilities Department.

39. Despite Plaintiff's complaints, the pervasive sex/gender comments continued.

~~36.~~40. In fact, in or around December 2023, Mr. Martinez told Plaintiff's coworkers in the Facilities Department, "Ignore Plaintiff, she doesn't know what she's talking about **because**

she's a woman."

~~37.~~41. The above are just a few examples of the pervasive sex/gender comments to which Plaintiff was regularly subjected while working for Defendant PLANNED PARENTHOOD.

***Domestic Violence Discrimination***

~~38.~~42. In addition to the sex/gender discrimination and harassment to which she was subjected, Plaintiff was also discriminated against because of her status as a domestic violence survivor.

~~39.~~43. For example, Mr. Martinez regularly told Plaintiff that she was "Crazy" for continuing her legal efforts against her abuser.

~~40.~~44. Additionally, Ms. Mille shared with some of Defendant PLANNED PARENTHOOD's other Managers that Plaintiff was living in a domestic violence shelter and that food she had stored for herself, as well as her daughter, had been stolen.

~~41.~~45. Then, in or around 2023, Ms. Mille showed Plaintiff a text message that she (Ms. Mille) had received from Senior Facilities and Security Manager of Region 2, Michael Friedman, of a bar of soap dipped in chocolate with the message, "**This is what [Plaintiff] needs to do when her food gets stolen**."

~~42.~~46. Mr. Friedman was mocking Plaintiff for having food stolen while living in a domestic violence shelter.

***Religion and Race Discrimination***

~~43.~~47. Additionally, Mr. Martinez also made numerous discriminatory remarks regarding Plaintiff's religion (Santeria), as well as the elekes and ildes she wore in furtherance of her sincerely held beliefs.

~~44.~~48. For example, in or around June 2022, Mr. Martinez asked, "**What are those things you have around your neck, you're not going to send me spirits, are you**?" Plaintiff replied, "I

was baptized in Santeria and these are my necklaces."

~~45.~~49. On another occasion, in or around August 2022, Mr. Matinez said to his coworkers in Plaintiff's presence, "**[Plaintiff] practices Voodoo everyone**, **watch out now**."

~~46.~~50. Then, in or around June 2023, Mr. Martinez told Plaintiff to rub her "Religious beads" on the clothing of a mail room employee so that something bad would happen to the employee.

51. Moreover, Mr. Martinez regularly said that Plaintiff practiced "Voodoo."

~~47.~~52. Plaintiff reasonably believed that Mr. Martinez' inappropriate and offensive comments referred both to her practice of Santeria, as well as her Puerto Rican racial background, as Santeria is widely practice in Puerto Rico. ~~."~~

***~~Retaliation~~ FMLA Violations, Disability Discrimination, and Retaliation***

~~48.~~53. In or around July 2023, Mr. Martinez instructed Mail Clerk, Tiffany Abbott, to process some of Defendant PLANNED PARENTHOOD's invoices. However, Ms. Abbott had not been trained to properly handle this task because it was outside of her regular work duties.

~~49.~~54. Even so, Mr. Martinez blamed Plaintiff for Ms. Abbott's mistakes and said, "You don't know how to do your job."

~~50.~~55. Mr. Martinez blamed Plaintiff for Ms. Abbot's error, and claimed that she did not know how to do her job, to create a pretextual reason for her eventual termination.

~~51.~~56. As a result, in or around July 2023, Plaintiff complained to Ms. Mille that Mr. Martinez was purposefully making Plaintiff's job more difficult and, "The situation with [Mr. Martinez] is out of hand. He's causing confusion in my work. I don't know if it's malicious intent or if you spoke to him (about my May 2023 complaints of harassment and discrimination). I did inform Mr. Martinez that if this continues, I'd report to HR and the Union." Ms. Mille replied, "**We in Facilities don't go to HR**. You threatened [Mr. Martinez] by telling him you would

go to HR and the Union. **I'm disappointed in you and in the fashion that you handled this**."

~~52.~~57. Plaintiff was blindsided by Ms. Mille's dismissal of her reasonable complaints and decided to report Mr. Martinez to Defendant PLANNED PARENTHOOD's HR.

~~53.~~58. Accordingly, shortly after the conversation with Ms. Mille, Plaintiff reported Mr. Martinez' ongoing discrimination against her sex/gender to HR Representatives, Naomi Cunningham and Pamela Davis.

~~54.~~59. Shortly afterwards, Plaintiff also complained to her Union representative, Eunia Lantinwo, about the discrimination she was experiencing.

~~55.~~60. Furthermore, around the same time, Plaintiff also complained to Assistant VP of HR, Christopher Gonzalez, "**[Mr. Martinez] is derogatory towards me because I am a woman and telling me I can't do my job. [Mr. Martinez] also made inappropriate comments about medical assistants saying that they have 'big butts' and talked about sex**." Mr. Gonzalez said that Defendant PLANNED PARENTHOOD would investigate her complaints.

Formatted: Font: Bold

~~56.~~61. Nevertheless, Plaintiff was not interviewed or made aware of Defendant PLANNED PARENTHOOD's "investigation."

~~57.~~62. However, on or about September 28, 2023, more than two months after her complaint, Plaintiff met with Mr. Gonzalez, HR Generalist, Maggie Cavanaugh, and Union Organizer, Priscilla Pena, to discuss her complaints. During this meeting, Plaintiff repeated the complaints that she had against Mr. Martinez and Ms. Mille. Ms. Cavanaugh told Plaintiff, "I'll get back to you about this."

~~58.~~63. ~~However, s~~Shortly afterwards, and in retaliation for her complaints, Ms. Mille began to assign Plaintiff work outside of her regular responsibilities.

~~59.~~64. Specifically, Ms. Mille increased the number of locations for which Plaintiff performed work from five to twenty-four and required Plaintiff to join interviews with prospective employees to ask "diversity and equity" based questions.

~~60.~~65. Ms. Mille assigned Plaintiff these additional tasks to make her workplace so unbearable that she resigned.

~~61.~~66. In the alternative, Ms. Mille assigned Plaintiff these additional tasks to ensure that she could not reasonably perform her work responsibilities.

~~62.~~67. In or around Fall 2023, Plaintiff emailed Defendant PLANNED PARENTHOOD's HR department, Ms. Pena, as well as Ms. Lantinwo, and reported Ms. Mille's assignment of work outside of her work responsibilities.

~~63.~~68. In or around November 2023, Mr. Gonzalez told Plaintiff that she had sent "too many emails," related to her allegations of discrimination.

~~64.~~69. Despite Plaintiff's repeated complaints, the retaliation continued.

~~65.~~70. To that end, on or about December 21, 2023, Plaintiff text messaged Ms. Mille at 6:38 A.M., and again at 8:40 A.M. (because she did not receive a response to her earlier text message), to request a sick day. Plaintiff also sent Ms. Mille a doctor's note excusing her from work on December 21, 2023 and December 22, 2023.

~~66.~~71. Nevertheless, and in clear retaliation for her protected activity, Ms. Pena accused Plaintiff of being a "no call, no show" on December 21, 2023. Plaintiff provided Ms. Pena with screenshots of her text messages with Ms. Mille, and the "no call, no show" was rescinded.

~~67.~~72. Similarly, on or about December 27, 2023, Plaintiff was approved to work remotely because her daughter was out of school on Christmas break, when her laptop charger stopped working.

~~68.~~73. Plaintiff immediately submitted a "ticket" to Defendant PLANNED PARENTHOOD's IT Department and informed Mr. Gonzalez of her technical difficulties. In direct contrast with Defendant PLANNED PARENTHOOD's typical practice of sending a replacement charger, Mr. Gonzalez said, "There's nothing we can do" and said that Plaintiff needed to take PTO until she could return to the office in-person.

~~69.~~74. Mr. Gonzalez forced Plaintiff to take PTO, instead of following the regular protocols when an employee suffered technical difficulties to deplete Plaintiff's PTO and get her to resign.

~~70.~~75. Then, in or around February 2024, Plaintiff received an offer letter from Defendant PLANNED PARENTHOOD to change her title to Administrative Coordinator and increase her rate of pay to $31.47[1]. However, although not communicated to her in December 2023 when she accepted the title change, Plaintiff learned from the offer letter that her hours would be cut to twenty-two per week, which would have rendered this a pay **decrease**.

~~71.~~76. As a result, Plaintiff again complained to her Union about the ongoing harassment, discrimination, and retaliation.

~~72.~~77. To resolve this issue, Defendant PLANNED PARENTHOOD offered Plaintiff the change in title and pay **but only if her work schedule changed from 8:30 A.M. to 5 P.M. Monday through Friday**.

~~73.~~78. However, Defendant PLANNED PARENTHOOD was well aware that Plaintiff could not work that schedule because of her long standing reasonable accommodations due to her familial status, ~~and~~ survivor of domestic violence status, and disabilities. ~~.~~

~~74.~~79. Defendant PLANNED PARENTHOOD pulled a "bait and switch" with Plaintiff concerning her new schedule and knew that she would not be able to work the proposed

[1] Plaintiff's union successfully negotiated this change in title and raise for Plaintiff in or around December 2023.

schedule due to her accommodations.

75.80. On or about April 24, 2024, Plaintiff had a grievance call with Mr. Gonzalez and a union representative, during which she was told that she would need to report to the office three (3) days per week, and that in order to attend to her domestic violence appointment/mental health therapy sessions appointments, that she would need to use PTO or apply for FMLA-related leave. Ms. Lantinwo said that Plaintiff would quickly drain her PTO and would need to be accommodated in a different way since FMLA leave is unpaid. Plaintiff also explained that she felt unsafe working from the office with that frequency, as the commute to and from the office would increase the chances of her abuser locating her, as well as the fact that she had long standing mental health appointments on Fridays.

76.81. During this call, Plaintiff emphasized that she could not report to work in-person on Fridays because of her longstanding mental health therapy sessions, and requested again that she be allowed to work the same schedule that she had been. Nevertheless, Mr. Gonzalez denied Plaintiff's request.

77.82. Then, on or about April 26, 2024, Plaintiff asked Ms. Lantinwo and Ms. Pena to request FMLA paperwork from Defendant PLANNED PARENTHOOD on her behalf, which they did.

78.83. That day, Plaintiff did not attend work because Mr. Gonzalez had previously informed her that the 5 PM to 7 PM Friday schedule could not be granted anymore. Also, Plaintiff had told Defendant PLANNED PARENTHOOD that she would not be able to work from 8:30 AM to 5:30 PM because of her long standing mental health therapy appointment, and for fear that her abuser would be able to locate her, and because of her disabilities.

79.84. Plaintiff reasonably believed that she put management on notice of her absence from work on April 26, 2024.

~~80.~~85. On or about May 1, 2024, Plaintiff requested paperwork from Defendant PLANNED PARENTHOOD's Senior Benefits Coordinator, Gladys Atiles, concerning intermittent FMLA leave.

~~81.~~86. Defendant PLANNED PARENTHOOD did not provide Plaintiff with the requested paperwork.

~~82.~~87. That same day, Plaintiff attended another grievance call with Mr. Gonzalez, Ms. Mille, Ms. Pena, and Ms. Lantinwo, during which she again explained that she would not be able to work the new work schedule on May 3, 2024 because of her longstanding mental health appointments and requested that she be allowed to work the same schedule that she had been.

~~83.~~88. Accordingly, on or about May 3, 2024, Plaintiff once again attended her documented mental health therapy appointments and missed work.

~~84.~~89. On or about May 6, 2024, Plaintiff spoke with Ms. Atiles, and was *finally* provided with information about the FMLA even though it had been initially requested on April 26, 2024 and May 1, 2024.

~~85.~~90. Then, on or about May 7, 2024, in retaliation for Plaintiff's repeated complaints, as well as her request for information concerning the FMLA, Plaintiff was disciplined for an alleged "no call/no show" on May 3, 2024.

~~86.~~91. However, this retaliatory discipline is pretext because Plaintiff had informed Defendant PLANNED PARENTHOOD on April 24, 2024 that she would not be able to attend work on May 3, 2024 because of her long standing mental health therapy.

~~87.~~92. On or about June 3, 2024, Plaintiff requested intermittent FMLA leave for her mental health, as needed.

93. That same day, Defendant PLANNED PARENTHOOD rejected Plaintiff's request for

intermittent FMLA leave as needed and only approved Plaintiff for FMLA protected leave for one hour every Friday.

~~88.~~94. However, Plaintiff could not attend her therapy appointment and return to work within one hour because of her documented disabilities.

~~89.~~95. ~~Because~~ In or around mid-June 2024, Defendant PLANNED PARENTHOOD ~~continued to~~continued to refuse to accommodate Plaintiff's need for FMLA leave related to her disabilities, as well as status as a domestic violence survivor, and as a result, ~~leave for her obligations stemming from her domestic violence issues, as well as her request for intermittent FMLA leave due to her ongoing mental health issues,~~ Plaintiff continued to use PTO.

~~90.~~96. Then, on or about June 23, 2024, Plaintiff asked Ms. Millie how she could request PTO for the following day because she had an appointment with Social Services to review a "domestic violence safety plan." Ms. Millie responded by outlining Defendant PLANNED PARENTHOOD's attendance policy and noted that Plaintiff could be disciplined if her attendance did not improve.

~~91.~~97. Plaintiff reasonably believed that Ms. Millie was making a thinly veiled threat of discipline if she continued to utilize her FMLA leave and accommodations.

~~92.~~98. As a result, on or about June 25, 2024, Plaintiff emailed Ms. Mille, HR Representatives, Eddyris Vasquez, as well as Ms. Cavanaugh, resigned her employment, and wrote, "I tried to find the courage and strength to fight through the adversities I have faced while being an employee, but it began and continues to take a toll on me, exacerbating my mental illnesses and causing injury to my physical health."

~~93.~~99. On or about June 25, 2024, Plaintiff was constructively discharged from her position at Defendant PLANNED PARENTHOOD.

~~94.~~100. Defendant PLANNED PARENTHOOD discriminated against Plaintiff because of her request for a reasonable accommodation and to avoid having to accommodate her in the future.

~~95.~~101. Defendant PLANNED PARENTHOOD would not have been harassed or discriminated against Plaintiff but for her sex/gender, race, religion, actual and/or perceived disability, and domestic violence victim status.

~~96.~~102. Defendant PLANNED PARENTHOOD would not have retaliated against Plaintiff but for her opposition to their unlawful employment practices.

~~97.~~103. Defendant PLANNED PARENTHOOD's actions were intended to, and did, create a work environment that no reasonable person would tolerate.

~~98.~~104. Defendant PLANNED PARENTHOOD's violations of the FMLA were willful.

~~99.~~105. As a result of Defendant PLANNED PARENTHOOD's actions, Plaintiff felt and continues to feel extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

~~100.~~106. As a result of Defendant PLANNED PARENTHOOD's discriminatory and intolerable treatment of Plaintiff, she has suffered, and continues to suffer, severe emotional distress and physical ailments.

~~101.~~107. As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, the loss of income, the loss of a salary, bonuses, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses and emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

**AS A FIRST CAUSE OF ACTION**
**UNDER FEDERAL LAW**
**42 U.S.C. §1981**

~~102.~~108. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

~~103.~~109. 42 U.S.C. § 1981 states in relevant part as follows:

a. Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

b. "Make and enforce contracts" defined for purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981.

~~104.~~110. Plaintiff was discriminated against because of her race (Puerto Rican/Hispanic/Santeria) as provided under 42 U.S.C. § 1981 and has suffered damages as set forth herein.

~~105.~~111. Plaintiff also claims retaliation under 42 U.S.C. § 1981, as well as constructive discharge because of her race under 42 U.S.C. § 1981.

Formatted: Space After: 0 pt, Line spacing: Double

**AS A SECOND CAUSE OF ACTION**
**UNDER THE FAMILY AND MEDICAL LEAVE ACT**
**RETALIATION AND INTERFERENCE**

~~106.~~112. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

~~107.~~113. Family and Medical Leave Act, 29 U.S.C. § 2615(a) provides:

(1) Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this chapter.

~~(1)~~

(2) Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

~~108.~~114. Defendant PLANNED PARENTHOOD interfered with Plaintiff's rights under the above section, discriminated/retaliated against Plaintiff, and constructively discharged Plaintiff from her employment to interfere with her ability to take future leave under the FMLA, as well as the fact that she took leave under the FMLA.

**AS A THIRD CAUSE OF ACTION**
**UNDER THE ADA**
**DISCRIMINATION**

~~109.~~115. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

~~110.~~116. The Americans with Disabilities Act, 42 U.S.C. § 12112(a) provides:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.
>
> 42 U.S.C. § 12203(a) provides:
>
> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

~~111.~~117. Defendant PLANNED PARENTHOOD discriminated against Plaintiff under the above sections by terminating and retaliating against her employment because of her disabilities. Defendant PLANNED PARENTHOOD's conduct was willful and intentional.

Formatted: Indent: Left: 0.75", No bullets or numbering

**AS A FOURTH CAUSE OF ACTION**
**UNDER THE ADA**
**RETALIATION**

~~112.~~118. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

~~113.~~119. Sec. 12203 of the ADA. Prohibition against retaliation and coercion provides as follows:

a. Retaliation: No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

b. Interference, coercion, or intimidation: It shall be unlawful to coerce, intimidate, threaten, or interfere with an individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

~~114.~~120. As a result of Defendant PLANNED PARENTHOOD's unlawful discriminatory practices, Plaintiff suffered, and continues to suffer, the loss of income, the loss of salary, bonuses, benefits, and other compensation, as well as future pecuniary losses. Plaintiff also has suffered severe emotional and physical distress and injury.

~~115.~~121. Defendant PLANNED PARENTHOOD's actions were malicious, outrageous, and conducted with full knowledge of the law, warranting the award of punitive damages, along with compensatory damages.

~~116.~~122. Defendant violated Plaintiff's rights as set forth herein.

**AS A FIFTH CAUSE OF ACTION**
**UNDER TITLE VII**
**DISCRIMINATION**

~~117.~~123. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

~~118.~~124. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a) provides that:

> It shall be an unlawful employment practice for an employer - (1) … to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment because of such individual's race … religion, sex [.]

~~119.~~125. Defendant PLANNED PARENTHOOD engaged in unlawful employment practices, prohibited by Title VII by discriminating against Plaintiff on the basis of her sex, race, and religion (Santeria), ~~and domestic violence victim status~~ as well as retaliation and constructive discharge.

Formatted: Left

**AS A SIXTH CAUSE OF ACTION**
**UNDER TITLE VII**
**<u>RETALIATION</u>**

~~120.~~126. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

~~121.~~127. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees … because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

~~122.~~128. Defendant PLANNED PARENTHOOD engaged in an unlawful employment practice, prohibited by Title VII, by retaliating against Plaintiff, including constructive discharge, because of her opposition to PLANNED PARENTHOOD's unlawful employment practices.

**AS A SEVENTH CAUSE OF ACTION**
**UNDER STATE LAW**
**<u>DISCRIMINATION</u>**

~~123.~~129. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

~~124.~~130. Executive Law § 296 provides that:

> 1. It shall be an unlawful discriminatory practice: (a) For an employer … because of an individual's … race, creed, … sex, disability, … or status as a victim of domestic violence, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

~~125.~~131. Defendant PLANNED PARENTHOOD engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her sex/gender, race, religion (Santeria), disability, and domestic violence victim status, as well as retaliation and constructive discharge.

~~126.~~132. Plaintiff hereby makes a claim against the Defendant PLANNED PARENTHOOD under all of the applicable paragraphs of Executive Law Section 296.

**AS AN EIGHTH CAUSE OF ACTION**
**UNDER STATE LAW**
**RETALIATION**

~~127.~~133. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

~~128.~~134. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice:

> For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article.

~~129.~~135. Defendant PLANNED PARENTHOOD engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against Plaintiff, constructive discharge, because of Plaintiff opposition to her employer's unlawful employment practices.

**AS A NINTH CAUSE OF ACTION**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**DISCRIMINATION**

~~130.~~136. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

~~131.~~137. The Administrative Code of City of New York, Title 8, § 8-107 (1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer … because of the actual or perceived … race, creed, … gender, disability, caregiver status, gender… of any person … [t]o refuse to hire or employ or to bar or to discharge from employment such person … or … [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment.

~~132.~~138. The Administrative Code of the City of New York, Title 8, § 8-107 (27) provides that:

> It shall be an unlawful discriminatory practice for an employer, or an agent thereof, because of any individual's actual or perceived status as a victim of domestic violence, or as a victim of sex offenses or stalking … (2) to refuse to hire or employ or to bar or to discharge from employment; or (3) to discriminate against an individual in compensation or other terms, conditions, or privileges of employment.

~~133.~~139. Defendant PLANNED PARENTHOOD engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff on the basis of her sex/gender, race, religion (Santeria), disability, caregiver status, and domestic violence victim status, as well as retaliation and constructive discharge.

**AS A TENTH CAUSE OF ACTION**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**RETALIATION**

~~134.~~140. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

~~135.~~141. The New York City Administrative Code Title 8, § 8-107 (7) provides that:

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter…[.]

~~136.~~142. Defendant PLANNED PARENTHOOD engaged in an unlawful discriminatory practice by retaliating, and otherwise discriminating against Plaintiff, including, constructive discharge.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant PLANNED PARENTHOOD:

A. Declaring that the Defendant PLANNED PARENTHOOD engaged in unlawful employment practices prohibited by the FMLA, 42 U.S.C. §1981, ADA, Title VII, the New York State Human Rights Law, and the New York City Administrative Code, on the basis of her sex/gender, race, religion (Santeria), actual and/or perceived disability, familial status, caregiver status, and domestic violence victim status, as well as retaliation and constructive discharge;

B. Awarding damages to Plaintiff for all lost wages and benefits past and future, back pay and front pay and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practice;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation;

D. Awarding Plaintiff liquidated damages under the FMLA;

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

G. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

**JURY DEMAND**

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff demands judgment against the Defendant PLANNED PARENTHOOD in an amount to be determined at the time of trial plus interest, Punitive Damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: July 20, 2026
New York, New York

**Phillips & Associates, PLLC**
*Attorneys for Plaintiff*

By: */s/ Gregory Kirschenbaum*
Gregory W. Kirschenbaum, Esq.
45 Broadway, 28th Floor
New York, NY 10006
(212) 248-7431