UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X Case No.: 26-cv-03504-AS
SHADAY DELGADO,

Plaintiff,

-against-

PLANNED PARENTHOOD OF GREATER NEW YORK, INC.,

Defendant.
-------------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

**Phillips & Associates, PLLC**
*Attorneys for Plaintiff*
45 Broadway, 28th Floor
New York, NY 10006
(212) 248-7431

# Table of Contents


**INTRODUCTION** ... 1

**PRELIMINARY STATEMENT** ... 1

**STATEMENT OF MATERIAL FACTS** ... 1

**FEDERAL COURT HAS A "FACIALLY PLAUSIBLE" "NOTICE PLEADING" REQUIREMENT** ... 8

**ARGUMENTS** ... 10

**I. PLAINTIFF'S CLAIMS ARE NOT TIME-BARRED** ... 10

**A. Title VII and the ADA** ... 10

**B. NYSHRL and NYCHRL** ... 11

**II. PLAINTIFF WAS DISCRIMINATED AGAINST IN VIOLATION OF THE ADA, TITLE VII, 42 U.S.C. §1981, NYSHRL, AND NYCHRL** ... 12

**A. Plaintiff was discriminated against because of her disabilities** ... 13

**B. Plaintiff was discriminated against because of her sex/gender** ... 16

**C. Plaintiff was discriminated against because of her race/religion** ... 20

**D. Plaintiff was discriminated against because she is a domestic violence survivor** . 21

**III. PLAINTIFF WAS RETALIATED AGAINST** ... 22

**A. ADA, TITLE VII, and 42 U.S.C. §1981** ... 22

**C. NYSHRL and NYCHRL Retaliation** ... 24

**IV. PLAINTIFF'S FMLA RIGHTS WERE VIOLATED** ... 25

**A. FMLA Statue of Limitations** ... 25

**B. FMLA Interference** ... 25

**C. FMLA Retaliation** ... 26

**CONCLUSION** ... 28

# Table of Authorities

## Federal Cases

*Anderson v. Conboy*,
156 F.3d 167 (2d Cir. 1998) ........ 20

*Arazi v. Cohen Bros. Realty Corp.*,
2022 U.S Dist. LEXIS 56549 (S.D.N.Y. March 28, 2022) ........ 12, 24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 9

*Azzarmi v. Sedgwick Claims Mgmt. Servs.*,
2025 U.S. Dist. LEXIS 187246 (S.D.N.Y. Sep. 23, 2025) ........ 22

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 8, 9

*Bell v. N.Y.C. Dep't of Educ.*,
2026 U.S. Dist. LEXIS 159481 (S.D.N.Y. Apr. 10, 2026) ........ 18

*Buon v. Spindler*,
65 F.4th 64 (2d Cir. 2023) ........ 13

*Caskey v. Cty. of Ontario*,
560 Fed. App'x 57 (2d Cir. 2014) ........ 14, 15

*Catania v. NYU Langone Health Sys.*,
2022 U.S. Dist. LEXIS 220075 (S.D.N.Y. Dec. 5, 2022) ........ 27

*Chin-McKenzie v. Continuum Health Partners*,
876 F. Supp. 270 (S.D.N.Y. 2012) ........ 19

*Corbin v. Triborough Bridge & Tunnel Auth.*,
2026 U.S. Dist. LEXIS 173105 (S.D.N.Y. Aug. 4, 2026) ........ 12

*Darrell v. Consol. Edison Co.*,
2004 U.S. Dist. LEXIS 8934 (S.D.N.Y. May 15, 2004) ........ 12

*DiLaurenzio v. Atlantic Paratrans, Inc.*,
926 F. Supp. 310 (E.D.N.Y. 1996) ........ 20

*DiNome v. Cordis US Corp.*,
2024 U.S. Dist. LEXIS 149377 (S.D.N.Y. Aug. 21, 2024) ........ 16

*Espinal v. Goord*,
558 F. 3d 119 (2d Cir. 2009) ........ 27

*Gold v. Barry R. Carus, P.C.*,
2003 U.S. Dist. LEXIS 18254 (E.D.N.Y. July 26, 2003) .......... 25

*Goldstein v. Pataki*,
516 F. 3d 50 (2d Cir. 2008) .......... 9

*Gorzynski v. JetBlue Airways Corp.*,
596 F. 3d 93 (2d Cir. 2010) .......... 28

*Graziadio v. Culinary Inst. of Am.*,
817 F.3d 415 (2d Cir. 2016) .......... 25

*Hamilton v. Westchester Cty.*,
3 F.4th 86 (2d Cir. 2021) .......... 14

*Kemp v. Regeneron Pharms., Inc.*
2023 U.S. Dist. LEXIS 5213 (S.D.N.Y. Jan. 11, 2023) .......... 25

*Kemp v. Regeneron Pharms., Inc.*,
117 F.4th 63 (2d Cir. 2024) .......... 26

*King v. Aramark Servs.*,
96 F.4th 546 (2d Cir. 2024) .......... 10

*Kirkland-Hudson v. Mount Vernon City Sch. Dist.*,
665 F. Supp. 3d 412 (S.D.N.Y. 2023) .......... 27

*Littlejohn v. City of New York*,
795 F.3d 297 (2d Cir. 2015) .......... 13

*Lore v. City of Syracuse*,
670 F.3d 127 (2d Cir. 2012) .......... 22

*Mathirampuzha v. Potter*,
548 F.3d 70 (2d Cir. 2008) .......... 15

*McInerney v. Rensselaer Polytechnic Inst.*,
505 F.3d 135 (2d Cir. 2007) .......... 10

*Menaker v. Hofstra Univ.*,
935 F.3d 20 (2d Cir. 2019) .......... 17

*Menos v. Uncle Nearest, Inc.*,
2025 U.S. Dist. LEXIS 55318 (E.D.N.Y. Mar. 25, 2025) .......... 24

*Mitchell v. Planned Parenthood of Greater N.Y.*, Inc.,
745 F. Supp. 3d 68 (S.D.N.Y. 2024)........................................................................ 10, 16, 20

*Morrone v. Island Park Fire Dep't*,
2021 U.S. Dist. LEXIS 66991 (E.D.N.Y. Mar. 31, 2021) .......................................................... 21

*Olivieri v. Stifel*,
112 F.4th 74 (2d Cir. 2024) .................................................................................................... 10

*Papasan v. Allain*,
478 U.S. 265 (1986)................................................................................................................. 9

*Persechino v. United Servs., Inc.*,
2024 U.S. App. LEXIS 6970 (2d Cir. 2024) ........................................................................... 13

*Ponticelli v. Zurich Am. Ins. Group*,
16 F. Supp. 2d 414 (S.D.N.Y. 1998)....................................................................................... 20

*Redd v. N.Y. State Div. of Parole*,
678 F. 3d 166 (2d Cir. 2012)................................................................................................... 19

*Reilly v. Revlon, Inc.*,
620 F. Supp. 2d 524 (S.D.N.Y. 2009)..................................................................................... 27

*Rivera v. Orange Cty.*,
2013 U.S. Dist. LEXIS 30847 (S.D.N.Y. Mar. 5, 2013) ........................................................... 23

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*,
743 F.3d 11 (2d Cir. 2012)...................................................................................................... 20

*Rodal v. Anesthesia Group of Onondaga, P.C.*,
369 F.3d 113 (2d Cir. 2004).................................................................................................... 14

*Rosado v. Port of Auth. Of N.Y. & N.J.*,
2024 U.S. App. LEXIS 3670 (2d Cir. 2024) ........................................................................... 11

*Rosso v. Pi Mgmt. Assocs., L.L.C.*,
2005 U.S. Dist. LEXIS 35862 (S.D.N.Y. Dec. 22, 2005) ......................................................... 17

*Russo v. Wyandanch Union Free Sch. Dist.*,
2024 U.S. App. LEXIS 12404 (2d Cir. May 23, 2024) ............................................................ 23

*Sharikov v. Philips Med. Sys. MR*,
103 F.4th 159 (2d Cir. 2024) .................................................................................................. 23

*Shelton v. Trs. Of Columbia Univ.*,
369 Fed. App'x 200 (2d Cir. 2010) ........ 22

*Sikhs for Justice v. Nath*,
893 F. Supp. 2d 598 (S.D.N.Y. 2012) ........ 9

*Slater v. NYU Langone Health Sys.*,
2025 U.S. Dist. LEXIS 149550 (E.D.N.Y. Aug. 4, 2025) ........ 15

*Soules v. Connecticut*,
882 F.3d 52 (2d Cir. 2018) ........ 11

*Stryker v. HSBC Sec. (USA),*
2020 U.S. Dist. LEXIS 158630 (S.D.N.Y. Aug. 31, 2020) ........ 16

*Thomas v. Amazon.com Servs. LLC*,
2025 U.S. Dist. LEXIS 10401 (E.D.N.Y. Jan 21, 2025) ........ 19, 21

*Tolbert v. Smith*,
790 F.3d 427 (2d Cir. 2015) ........ 18

*Vega v. Hempstead Union Free Sch. Dist.*,
801 F.3d 72 (2d Cir. 2015) ........ 13, 20

*Veldran v. Dejoy*,
839 Fed. App'x 577 (2d Cir. 2021) ........ 14

*Wiercinski v. Magia 57, Inc.*,
787 F.3d 106 (2d Cir. 2015) ........ 18

*Williams v. Westchester Med. Ctr. Health Network*,
2025 U.S. Dist. LEXIS 57856 (S.D.N.Y. March 25, 2025) ........ 26

*Wixel v. Bd. Of Educ. Of City of New York*,
287 F. 3d 138 (2d Cir. 2002) ........ 22

*Yobo v. N.Y. State Facilities Dev. Corp.*,
13 Fed. App'x 41 (2d Cir. 2001) ........ 10

*Zabar v. N.Y.C. Dep't of Educ.*,
2020 U.S. Dist. LEXIS 83840 (S.D.N.Y. May 12, 2020) ........ 14

*Zemsky v. City of New York*,
821 F.2d 148 (2d Cir. 1987) ........ 13

**State Cases**

*Williams v. New York City Hous. Auth.*,
872 N.Y.S. 2d 27 (N.Y. App. Div. 2009) .......... 19

*Zakrzewska v. New School*,
14 N.Y. 3d 469 (N.Y. 2010) .......... 19

**Statutes**

29 U.S.C. §2612(d) .......... 26

29 U.S.C. Sec. 2617(c)(3) .......... 25

42 U.S.C. §2000e-2(a)(1) .......... 13

Fed. R. Civ. P. 3 .......... 25

N.Y. City Admin. Code § 8-107(1)(a) .......... 21

N.Y. Exec. Law § 292(21) (Consol. 2026) .......... 16

N.Y. Exec. Law § 296(1)(a) .......... 21

N.Y. Exec. Law §296 (1)(a) (Consol. 2026) .......... 13

N.Y.C. Admin. Code §8-102(16) (2026) .......... 16

N.Y.C. Admin. Code §8-107 (27) (Consol. 2026) .......... 13

## INTRODUCTION

Plaintiff, Shaday Delgado ("Plaintiff"), respectfully submits this memorandum of law in opposition to Defendant Planned Parenthood of Greater New York, Inc.'s ("Planned Parenthood") Motion to Dismiss Plaintiff's First Amended Complaint ("FAC").

## PRELIMINARY STATEMENT

Defendant's Motion to Dismiss the FAC ("Defts' Br.") should be denied in its entirety because (1) Plaintiff's claims are not time barred; (2) Plaintiff properly pled that she was harassed and discriminated against; (3) Plaintiff properly pled that she was retaliated against, and (4) Plaintiff properly pled violations of the FMLA. For the foregoing reasons, it is respectfully requested that Defendant's motion to dismiss be denied in its entirety.

## STATEMENT OF MATERIAL FACTS

In or around January 2019, Plaintiff began working for Defendant as a paid Intern. (FAC ¶13). In or around August 2019, Plaintiff was hired as an Administrative Assistant in the Facilities Department. (FAC ¶14). From the start of her employment, Plaintiff was granted accommodations due to her status as a survivor of domestic violence and her diagnosis of PTSD, Major Depressive Disorder, and Generalized Anxiety Disorder. (FAC ¶16). These accommodations included being allowed to work a "flexible hybrid schedule" and attend therapy sessions on Fridays. (FAC ¶15). As such, Plaintiff worked a unique schedule for the first few years of her employment. (FAC ¶17).

Shortly after she was hired, Plaintiff began to be discriminated against. To that end, on a regular and consistent basis, Plaintiff was referred to by Defendant's management as "Girl" and told "You don't know what you're talking about." (FAC ¶19). At the same time, Region 1 Facilities Manager, Rene Martinez, regularly made gendered comments such as, "Just focus on being a receptionist and Secretary." (FAC ¶10). Similarly, in or around February 2020, Mr.

Martinez mocked Plaintiff due to her gender and stated, "**What do *you* know**? **Now all the sudden** [**Plaintiff**] **knows how to paint and put sheetrock up** … **Look guys, isn't that cute of her**?" (FAC ¶21).

Then, after the COVID-19 pandemic began, Defendant switched to full-time remote work and Mr. Martinez started making comments about Plaintiff's appearance during Zoom calls. Specifically, Mr. Martinez denigrated how Plaintiff looked on camera and regularly said that it looked like she "rolled out of bed" and was not ready to work. (FAC ¶23). Notably, Mr. Martinez never made such comments about Plaintiff's male coworkers. (*Id.*). On another occasion, in or around 2020, Mr. Martinez told Plaintiff that she needed to "**Stick to being pretty and staying on the computer**." (FAC ¶24)

Then, in or around 2021, Defendant hired Khemraj Tiwari as its Vice President for Facilities and Security. Like Mr. Martinez, Mr. Tiwari regularly discriminated against Plaintiff on the basis of her sex/gender. For instance, in or around 2021, Plaintiff told Mr. Tiwari that she attended Stonybrook University. Mr. Tiwari responded, "**I know a thing or two about the girls from Stony Brook and how they *get down* after hours**." (FAC ¶27).

Additionally, Mr. Martinez continued making his own discriminatory comments. On several occasions, Mr. Martinez told Plaintiff that Defendant's Assistants had "**Fat asses** in their scrubs." (FAC ¶29). Mr. Martinez also regularly told Plaintiff that she looked "**Shapely**" in her clothing and, "**Your ass looks fat**." (FAC ¶30).

Eventually, in or around April 2022, Plaintiff complained to VP of Facilities, Jennifer Mille, that Mr. Martinez made her uncomfortable because he regularly made comments about her appearance and gender. (FAC ¶31). Ms. Mille replied, "[Mr. Martinez] is just playing." (*Id.*). Plaintiff said, "No, he's making me uncomfortable with these comments." Incredulously, Ms.

Mille responded, "**As a woman in Facilities**, **you're going to deal with these things**. **You have to grow a thick skin**." (*Id.*). Later, Ms. Mille explained that when she first started working for Defendant in the Facilities Department, her male coworkers told her that if she wore a dress that she could not work because she was a girl. (FAC ¶32). Eventually, the meeting ended when Ms. Mille told Plaintiff that *she* would have to speak with Mr. Martinez if she was uncomfortable. (*Id.*).

Then, in or around June 2022, Mr. Martinez told Plaintiff, "**The Facilities Department is man's work**" and that Plaintiff was only hired to be on a computer. (FAC ¶33). Mr. Martinez also regularly emailed Plaintiff that he was "Better" than her. (FAC ¶34). Similarly, on or about February 16, 2023, Mr. Martinez told Plaintiff that her coworker, Amberlynn (last name currently unknown), must have been named after her father's "**Favorite porn star**." (FAC ¶36). On other occasions, Mr. Martinez told Plaintiff, "Stop busting **my balls**." (FAC ¶37).

Thereafter, in or around May 2023, Plaintiff again complained to Ms. Mille about Mr. Martinez' harassment. Ms. Mille excused Mr. Martinez' behavior and said that since his wife "stays at home," he thinks Plaintiff should too. (FAC ¶38). Plaintiff objected and said, "I'm having a hard time wrapping around my head why they think like that." Ms. Mille then put the onus on Plaintiff and said that she (Plaintiff) needed to prove to Mr. Martinez that she "belonged" in the Facilities Department. (*Id.*). Yet, the sex/gender comments continued. In fact, in or around December 2023, Mr. Martinez told Plaintiff's coworkers, "Ignore Plaintiff, she doesn't know what she's talking about **because she's a woman**." (FAC ¶40).

Plaintiff was also discriminated against because of her status as a domestic violence survivor. For example, Mr. Martinez regularly told Plaintiff that she was "Crazy" for continuing her legal efforts against her abuser. (FAC ¶43). Additionally, Ms. Mille shared with some of Defendant's other Managers that Plaintiff was living in a domestic violence shelter and that food

she had stored for herself, as well as her daughter, had been stolen. (FAC ¶44). Then, in or around 2023, Ms. Mille showed Plaintiff a text message that she (Ms. Mille) had received from Senior Facilities and Security Manager of Region 2, Michael Friedman, of a bar of soap dipped in chocolate with the message, "**This is what** [**Plaintiff**] **needs to do when her food gets stolen**." (FAC ¶45).

Moreover, Plaintiff was also subjected to discriminatory remarks concerning her religion (Santeria) and Puerto Rican racial background. (FAC ¶47, 52). For example, in or around June 2022, Mr. Martinez asked, "**What are those things you have around your neck, you're not going to send me spirits, are you**?" (FAC ¶48). Plaintiff replied, "I was baptized in Santeria and these are my necklaces." (*Id*.). Then, in or around August 2022, Mr. Matinez said, in Plaintiff's presence, "**[Plaintiff] practices Voodoo everyone**, **watch out now**." (FAC ¶49). Also, in or around June 2023, Mr. Martinez told Plaintiff to rub her "Religious beads" on the clothing of a mail room employee so that something bad happened. (FAC ¶50). Mr. Martinez also regularly said that Plaintiff practiced "Voodoo." (FAC ¶51).

Furthermore, Plaintiff was discriminated against because of her disabilities, she was retaliated against, and her FMLA rights were violated. In or around July 2023, Plaintiff complained to Ms. Mille that Mr. Martinez was making her job harder and, "I don't know if it's malicious intent or if you spoke to him (about my May 2023 complaints of harassment and discrimination). I did inform Mr. Martinez that if this continues, I'd report to HR and the Union." (FAC ¶56). Ms. Mille replied, "**We in Facilities don't go to HR**. You threatened [Mr. Martinez] by telling him you would go to HR and the Union. **I'm disappointed in you and in the fashion that you handled this**." (*Id*.). Shortly after the conversation with Ms. Mille, Plaintiff reported Mr. Martinez' ongoing discrimination against her sex/gender to HR Representatives, Naomi

Cunningham and Pamela Davis. (FAC ¶58). Plaintiff also complained to her Union representative, Eunia Lantinwo, about the discrimination she was experiencing. (FAC ¶59).

Around the same time, Plaintiff also complained to AVP of HR, Christopher Gonzalez, "**[Mr. Martinez] is derogatory towards me because I am a woman and telling me I can't do my job. [Mr. Martinez] also made inappropriate comments about medical assistants saying that they have 'big butts' and talked about sex**." (FAC ¶60). Mr. Gonzalez said that Defendant would investigate her complaints. (*Id*.). Nevertheless, Plaintiff was not interviewed or made aware of Defendant's "investigation." However, on or about September 28, 2023, more than two months after her complaint, Plaintiff met with Mr. Gonzalez, HR Generalist, Maggie Cavanaugh, and Union Organizer, Priscilla Pena, to discuss her complaints. (FAC ¶62). During this meeting, Plaintiff repeated the complaints that she had against Mr. Martinez, as well as Ms. Mille, and was told that Defendant would "get back to her." (*Id*.).

Shortly afterwards, Ms. Mille increased the number of locations for which Plaintiff performed work from five to twenty-four and required Plaintiff to join interviews with prospective employees to ask "diversity and equity" based questions. (FAC ¶¶63, 64).

In or around Fall 2023, Plaintiff emailed Defendant's HR department, Ms. Pena, as well as Ms. Lantinwo, and reported Ms. Mille's assignment of work outside of her work responsibilities. (FAC ¶65). In or around November 2023, Mr. Gonzalez told Plaintiff that she had sent "too many emails" concerning her allegations of discrimination. (FAC ¶66).

Despite her complaints, Defendant continued retaliating against Plaintiff. To that end, on or about December 21, 2023, Plaintiff text messaged Ms. Mille twice before her shift to request a sick day and sent a doctor's note. (FAC ¶70). Nevertheless, Ms. Pena accused Plaintiff of being a "no call, no show" on December 21, 2023. (FAC ¶71).

Similarly, on or about December 27, 2023, Plaintiff was approved to work remotely because her daughter was out of school on Christmas break, when her laptop charger stopped working. (FAC ¶72). Plaintiff immediately submitted a "ticket" to Defendant's IT Department and informed Mr. Gonzalez of her technical difficulties. (FAC ¶73). In contrast with Defendant's typical practice of sending a replacement charger, Mr. Gonzalez said, "There's nothing we can do" and said that Plaintiff needed to take PTO until she could return to the office in-person. (*Id.*).

Then, in or around February 2024, Plaintiff received an offer letter from Defendant to change her title to Administrative Coordinator and increase her rate of pay to $31.47[1]. (FAC ¶75). However, although not communicated to her in December 2023 when she accepted the title change, Plaintiff learned from the offer letter that her hours would be cut from thirty-one hours per week to twenty-two, which resulted in a pay **decrease**. (*Id.*). To that end, in 2023, Plaintiff earned $45,785.88. (Pl. Aff. ¶62). After the cut in hours, Plaintiff's yearly wages would have gone down to $36,001.68. (Pl. Aff. ¶64).

As a result, Plaintiff again complained to her Union about the ongoing harassment, discrimination, and retaliation. Defendant then offered to keep her change in title and pay **but only if Plaintiff worked from 8:30 A.M. to 5 P.M. Monday through Friday**. (FAC ¶77). However, Defendant was aware that Plaintiff could not work that schedule because of her long standing reasonable accommodations due to her survivor of domestic violence status and disabilities. (FAC ¶78).

On or about April 24, 2024, Mr. Gonzalez told Plaintiff and her union representative that she now needed to report to the office three days per week and would need PTO and/or FMLA leave for her therapy sessions. (FAC ¶80). Ms. Lantinwo said that Plaintiff would quickly drain

[1] In December 2023, Plaintiff's union successfully negotiated this change in title and pay.

her PTO and would need to be accommodated in a different way since FMLA leave is unpaid. Plaintiff also explained that she felt unsafe working from the office that frequently because it increased the chances of her abuser locating her. (*Id.*). During this call, Plaintiff emphasized that she could not report to work in-person on Fridays because of her longstanding mental health therapy sessions and requested the same schedule she had for years. (FAC ¶81). Nevertheless, Mr. Gonzalez denied Plaintiff's request. (*Id.*).

Accordingly, on or about April 26, 2024, Plaintiff asked her union representatives to request FMLA paperwork on her behalf, which they did. (FAC ¶82). That day, Plaintiff did not attend work because she had been told that her longstanding accommodation could not be granted anymore. (FAC ¶83). Also, Plaintiff had told Defendant that she would not be able to work from 8:30 AM to 5:30 PM because of her long-standing mental health therapy appointment, for fear that her abuser would be able to locate her, and because of her disabilities. (*Id.*).

On or about May 1, 2024, Plaintiff requested FMLA paperwork from Defendant's Senior Benefits Coordinator, Gladys Atiles, which was ignored. (FAC ¶¶85, 86).

That same day, Plaintiff attended a grievance call with Mr. Gonzalez, Ms. Mille, Ms. Pena, and Ms. Lantinwo, during which she again explained that she would not be able to work the new work schedule on May 3, 2024 because of her longstanding mental health appointments. (FAC ¶87). Accordingly, on or about May 3, 2024, Plaintiff missed work due to therapy. (FAC ¶88).

On or about May 6, 2024, Plaintiff spoke with Ms. Atiles, and was *finally* provided with FMLA information. (FAC ¶89). The next day, Plaintiff was disciplined for an alleged "no call/no show" on May 3, 2024, even though she had informed that she would not be able to work that day because of her therapy. (FAC ¶¶90, 91).

On or about June 3, 2024, Plaintiff requested intermittent FMLA leave for her mental health, as needed. (FAC ¶92). That same day, Defendant rejected Plaintiff's request and only approved FMLA leave for one hour every Friday. (FAC ¶93). However, Plaintiff could not attend her therapy appointment, and return to work within one hour because of her documented disabilities. (FAC ¶94). Because Defendant refused to accommodate Plaintiff, she continued to use PTO for her therapy. (FAC ¶95).

Then, on or about June 23, 2024, Plaintiff asked Ms. Mille how she could request PTO for the following day because she had an appointment with Social Services to review a "domestic violence safety plan." (FAC ¶96). Ms. Mille responded by outlining Defendant's attendance policy and noted that Plaintiff could be disciplined if her attendance did not improve. (*Id.*). Plaintiff reasonably believed that Ms. Mille was making a thinly veiled threat of discipline if she continued to utilize her FMLA leave and accommodations. (FAC ¶97).

As a result, on or about June 25, 2024, Plaintiff emailed Ms. Mille, HR Representatives, Eddyris Vasquez, as well as Ms. Cavanaugh and was constructively discharged. (FAC ¶¶98, 99).

Thereafter, on July 1, 2024, Plaintiff filed a Charge of Discrimination at the EEOC. Kirschenbaum Decl. Ex. B. On April 28, 2026, Plaintiff timely filed the Complaint and Defendant filed a Motion to Dismiss. Dckt. 1, 12. On July 20, 2026, Plaintiff filed the FAC and Defendant filed a Motion to Dismiss the FAC. Dckt. 17, 22.

## **FEDERAL COURT HAS A "FACIALLY PLAUSIBLE" "NOTICE PLEADING" REQUIREMENT**

To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The issue at this stage "is not whether a Plaintiff will ultimately prevail, but

whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). Further,

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id*. As the Court held in *Twombly*, 550 U.S. 544 (2007), the pleading standard does not require "detailed factual allegations," but it demands more than an unadorned, the defendant-unlawfully- harmed-me accusation. *Id.* at 555, (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 677 – 78 (citing *Twombly*, 550 U.S. at 555 – 57).

Yet, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal citations and quotations omitted) (citing *Twombly*, 550 U.S. at 556 – 57).

Furthermore, "a heightened pleading requirement" requiring the pleading of specific facts beyond those necessary to state a claim and the grounds showing entitlement to relief, is impermissibl[e]." *Twombly*, 550 U.S. at 570. The *Twombly* Court also stated, "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* "In general, on a motion to dismiss, the Court must accept all factual allegations in the complaint as true, … drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F. 3d 50, 56 (2d Cir. 2008). Given this, Plaintiff has met her burden and Defendant's Motion to Dismiss should be denied.

## ARGUMENTS

### I. PLAINTIFF'S CLAIMS ARE NOT TIME-BARRED

#### A. Title VII and the ADA

Plaintiff's claims under Title VII and the ADA are not time-barred. Title VII and the ADA mandate that a charge of discrimination be filed with the EEOC within 300 days of the last discriminatory act. *Yobo v. N.Y. State Facilities Dev. Corp.*, 13 Fed. App'x 41, 43 (2d Cir. 2001); *McInerney v. Rensselaer Polytechnic Inst.*, 505 F.3d 135, 138 (2d Cir. 2007). Additionally, events before the 300-day period "may serve as background evidence to support timely claims under those statutes." *Mitchell v. Planned Parenthood of Greater N.Y.*, Inc., 745 F. Supp. 3d 68, 88 (S.D.N.Y. 2024).

To that end, for claims of a hostile work environment, the continuing violation doctrine means that "the statute of limitations period does not begin to run until the last discriminatory act in furtherance of the hostile work environment." *Olivieri v. Stifel*, 112 F.4th 74, 88 (2d Cir. 2024) (internal quotations omitted). As such, if one act "occurs within the filing period, the **hostile work environment claim is timely, and a factfinder can hold a defendant liable for the entire time period of the hostile environment, including the period falling outside of the limitations period**." *King v. Aramark Servs.*, 96 F.4th 546, 560 (2d Cir. 2024) (emphasis added and internal quotations omitted).

Here, the 300-day window starts on September 5, 2023 because the EEOC charge was filed on July 1, 2024. Kirschenbaum Decl. Ex. B. A review of Plaintiff's FAC makes clear that Plaintiff pled that in or around December 2023, Mr. Martinez told her coworkers, "Ignore [Plaintiff], she doesn't know what she's talking about because she's a woman." (FAC ¶40; Pl. Aff. ¶31). Mr. Martinez also regularly made comments about Plaintiff's religion/heritage. (FAC ¶¶48-52; Pl.

Aff. ¶42). These comments occurred within the 300-day window and thus Plaintiff's sex, race, and religion claims are timely.

Although the 300-day lookback is already satisfied, Plaintiff also pled that on a consistent basis **throughout her employment**, she was referred to by Defendant's management as "Girl," told "[y]ou don't know what you're talking about," told to "[j]ust focus on being a receptionist and a Secretary." (FAC ¶¶19, 20, 51; Pl. Aff. ¶¶12, 13). Therefore, the continuing violation doctrine applies to the hostile work environment claims.

At the same time, Plaintiff's FAC is riddled with allegations of disability discrimination within the 300-day window. (FAC ¶¶75, 77, 80, 93).

Moreover, Plaintiff's ADA claims should not be dismissed for failure to exhaust administrative remedies. The Second Circuit has found that "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency." *Soules v. Connecticut*, 882 F.3d 52, 57 (2d Cir. 2018). To that end, "[a] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can be reasonably expected to grow out of the charge that was made." *Rosado v. Port of Auth. Of N.Y. & N.J.*, 2024 U.S. App. LEXIS 3670, *5 (2d Cir. 2024). Here, the cover page of Plaintiff's EEOC Charge **marks the box for disability discrimination** and it describes Plaintiff's reasonable accommodations for therapy. *See* Kirschenbaum Decl. Ex. B. Thus, Defendant was on notice of Plaintiff's ADA claims and she exhausted her administrative remedies.

**B. NYSHRL and NYCHRL**

Plaintiff's claims under the NYSHRL and NYCHRL are not time-barred. "Under the NYSHRL and the NYCHRL, claims of discrimination are subject to three-year statutes of

limitations." *Darrell v. Consol. Edison Co.*, 2004 U.S. Dist. LEXIS 8934, *19 (S.D.N.Y. May 15, 2004). Because analysis of the continuing violation doctrine is fact-intensive, "[s]ome courts have thus declined to decide whether the continuing violation doctrine applies at the motion to dismiss phase." *Arazi v. Cohen Bros. Realty Corp.*, 2022 U.S Dist. LEXIS 56549, *39-40 (S.D.N.Y. March 28, 2022).

Plaintiff's Complaint was filed on April 28, 2026. Therefore, the "look back" period begins on April 28, 2023. As made clear in the FAC, Mr. Martinez made a discriminatory comment about Plaintiff's sex/gender in or around December 2023, and other discriminatory comments based on her sex/gender were made throughout her employment. (FAC ¶¶19-20; Pl. Aff. ¶¶12, 31). Likewise, In June 2023, Mr. Martinez harassed Plaintiff based on her race and religion when he told Plaintiff to "rub her religious beads" to bring bad luck to another employee. (FAC ¶50; Pl. Aff. ¶41). Furthermore, after April 28, 2023, Plaintiff was discriminated against based on her disabilities when her overall pay was cut, her accommodation was revoked, and when she was constructively discharged. (FAC ¶¶75, 80, 98; Pl. Aff. ¶¶63, 67, 84). Accordingly, Plaintiff's NYSHRL and NYCHRL claims are not time-barred.

## II. PLAINTIFF WAS DISCRIMINATED AGAINST IN VIOLATION OF THE ADA, TITLE VII, 42 U.S.C. §1981, NYSHRL, AND NYCHRL

"The ADA prohibits an employer from discriminating against a qualified individual on the basis of disability, including by failing to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *Corbin v. Triborough Bridge & Tunnel Auth.*, 2026 U.S. Dist. LEXIS 173105, *32 (S.D.N.Y. Aug. 4, 2026). Similarly, "Title VII makes it unlawful for an employer to … refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's race … religion, [or] sex."

*Buon v. Spindler*, 65 F.4th 64, 78 (2d Cir. 2023) (quoting 42 U.S.C. §2000e-2(a)(1)). Additionally, 42 U.S.C. §1981 protects a Plaintiff from discrimination "on account of [one's] race, ancestry, or ethnic characteristics." *Zemsky v. City of New York*, 821 F.2d 148, 150 (2d Cir. 1987). Finally, although discrimination claims under these statutes are analyzed under the *McDonnel Douglas* standard, at the motion to dismiss stage, "a plaintiff is not required to plead a *prima facie* case under *McDonnel Douglas*." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). Rather, Plaintiff must only provide sufficient facts to "give plausible support to the reduced requirements that arise under *McDonnel Douglas*." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

The NYSHRL and NYCHRL provide protection for all of the aforementioned protected classes, as well as "status as a victim of domestic violence." N.Y. Exec. Law §296 (1)(a) (Consol. 2026); N.Y.C. Admin. Code §8-107 (27) (Consol. 2026). Notably though, as discussed, *infra*, the NYSHRL and NYCHRL have more lenient standards than their Federal counterparts.

**A. Plaintiff was discriminated against because of her disabilities**

Plaintiff has established a *prima facie* case under the ADA. "[T]o establish a prima facie case under the ADA, a plaintiff must show by a preponderance of the evidence that: (1) h[er] employer is subject to the ADA; (2) [s]he was disabled within the meaning of the ADA; (3) [s]he was otherwise qualified to perform the essential functions of h[er] job, with or without reasonable accommodation; and (4) [s]he suffered adverse employment action because of h[er] disability." *Persechino v. United Servs., Inc.*, 2024 U.S. App. LEXIS 6970, *3 (2d Cir. 2024).

The first prong of her *prima facie* case is not in dispute and Plaintiff has pled the second prong. The ADA defines a disability as having "a physical or mental impairment that substantially limits one or more of his major life activities, (b) a record of such an impairment, or (c) is regarded

as having such an impairment." *Veldran v. Dejoy*, 839 Fed. App'x 577, 579 (2d Cir. 2021) (internal quotations and brackets omitted). Furthermore, "[t]he term substantially limits shall be construed broadly … and is not meant to be a demanding standard." *Hamilton v. Westchester Cty.*, 3 F.4th 86, 92 (2d Cir. 2021). This Court has held that a Plaintiff has met this standard when she alleges that she "suffers from depression and anxiety, and that these conditions have impaired … her ability to work." *Zabar v. N.Y.C. Dep't of Educ.*, 2020 U.S. Dist. LEXIS 83840, *11 (S.D.N.Y. May 12, 2020).

Here, the FAC demonstrates that Plaintiff had a disability under the ADA which substantially limited her ability to work. (FAC ¶16). Notably, when Plaintiff started working for Defendant she had a flexible work schedule **due to her weekly therapy appointments for PTSD, Major Depressive Disorder, and Generalized Anxiety Disorder**. *Id.*; (Pl. Aff. ¶7). Thus, Plaintiff has pled the first two prongs.

Plaintiff also properly pled the third prong of her *prima facie* case. "A disabled individual is qualified for a particular position if he can perform the essential functions of the job with or without reasonable accommodation." *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113 (2d Cir. 2004). Plaintiff worked for Defendant **for more than five years, with a reasonable accommodation,** before her constructive discharge. (FAC ¶¶15-16). This prong is sufficiently pled.

Lastly, the FAC makes clear that Plaintiff suffered an adverse action because of her disability. For an ADA claim, an adverse action is a "materially adverse change in the terms and conditions of employment." *Caskey v. Cty. of Ontario*, 560 Fed. App'x 57, 58 (2d Cir. 2014) . This change in the Plaintiff's working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities. Examples of such a change include … a

decrease in wage or salary." *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008). Furthermore, an adverse action can "take the form of a constructive discharge, which occurs when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Caskey*, 560 Fed. App'x at 59.

In this case, Plaintiff's pay was cut and she was constructively discharged. In or around December 2023, Plaintiff's union negotiated a title change for her as well as an increase in her hourly wage from $24.79 per hour to $31.47. (FAC ¶75; Pl. Aff. ¶63). However, when Plaintiff received the offer letter for her new role, her hours were cut from 31 hours per week to 22 per week. *Id.* This resulted in an overall **pay decrease**. (Pl. Aff. ¶63). Then, Defendant told Plaintiff that she must either accept the cut in hours or work a full-time schedule that **would no longer accommodate her long-standing reasonable accommodations for therapy.** (FAC ¶77; Pl. Aff. ¶70). When Plaintiff then applied for intermittent FMLA, Defendant only granted it for one hour per week, which was insufficient given her therapy sessions. (FAC ¶¶93, 94; Pl. Aff. ¶78).

These adverse actions go beyond mere inconvenience or a simple scheduling dispute. The main case cited by Defendant concerned a Plaintiff who alleged "she was forced to change her shift" but without any difference in pay or total hours. *Slater v. NYU Langone Health Sys.*, 2025 U.S. Dist. LEXIS 149550, *21 (E.D.N.Y. Aug. 4, 2025). In contrast, Plaintiff's pay was cut due to the decrease in hours. (FAC ¶75; Pl. Aff. ¶ 62-64). Plaintiff was then disciplined for attending her weekly therapy appointment, threatened with further discipline, and constructively discharged. (FAC ¶¶89, 95, and 98; Pl. Aff. ¶¶59, 82, 84). Such circumstances were materially adverse and therefore meet the standard for an adverse employment action under the ADA.

The FAC also shows that these adverse actions occurred because of her disability. "A strong showing of temporal proximity between evidence of a Plaintiff's disability and an adverse action can raise an inference of discrimination." *Stryker v. HSBC Sec. (USA),* 2020 U.S. Dist. LEXIS 158630, *2 (S.D.N.Y. Aug. 31, 2020). Here, Defendant rescinded Plaintiff's reasonable accommodation on April 24, 2024, rejected Plaintiff's accommodation request for FMLA on June 3, 2024, and then constructively discharged Plaintiff on June 25, 2024. (FAC ¶¶80, 93, 99; Pl. Aff. ¶¶78, 84). Therefore, Plaintiff has properly pled a violation of the ADA.

Plaintiff also pled disability discrimination under the NYSHRL and NYCHRL. "To state a cause of action to recover damages for employment discrimination in violation of the [NYSRL and] NYCHRL, a plaintiff must allege that (1) he or she is a member of a protected class, (2) he or she was qualified to hold the position, (3) he or she was subject to an unfavorable change or treated less well than other employees, and (4) the unfavorable change or different treatment occurred under circumstances giving rise to an inference of discrimination." *Mitchell*, 745 F. Supp. 3d at 104. The NYSHRL and NYCHRL both have more lenient definitions of a disability than the ADA. *See* N.Y. Exec. Law § 292(21) (Consol. 2026); N.Y.C. Admin. Code §8-102(16) (2026). Notably, Plaintiff need not show that her disability limits a "major life activity." *DiNome v. Cordis US Corp.*, 2024 U.S. Dist. LEXIS 149377, *25 (S.D.N.Y. Aug. 21, 2024).

Since the NYSHRL and NYCHRL have a lower standard than the ADA and Plaintiff properly pled a claim under the ADA, she has clearly made out a claim of disability discrimination under the NYSHRL and NYCHRL.

**B. Plaintiff was discriminated against because of her sex/gender**

Defendant also discriminated against Plaintiff based on her sex. To make out a *prima facie* case for sex discrimination, a Plaintiff "must show that: (i) he was a member of a protected class;

(ii) he qualified for the subject position; (iii) he suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Rosso v. Pi Mgmt. Assocs., L.L.C.*, 2005 U.S. Dist. LEXIS 35862, *48-49 (S.D.N.Y. Dec. 22, 2005). The first two prongs are not in dispute. *See* Def. Br. at 14.

Likewise, Plaintiff suffered an adverse employment action. As discussed *supra*, Plaintiff was given a "Sophie's Choice" between a reduction in her pay or a denial of her reasonable accommodation. (FAC ¶77; Pl. Aff. ¶67). Eventually, Plaintiff was constructively discharged. (FAC ¶99; Pl. Aff. ¶84). These facts constitute materially adverse changes in Plaintiff's employment conditions.

Plaintiff's sex was a motivating factor for the adverse actions. At the pleadings stage, "courts must determine whether sex was a motivating factor, *i.e.*, whether an adverse employment action was based, even in part, on sex discrimination." *Menaker v. Hofstra Univ.*, 935 F.3d 20, 39 (2d Cir. 2019). Throughout Plaintiff's employment she was called, "Girl" and told, "you don't know what you're talking about." (FAC ¶19; Pl. Aff. ¶12). Mr. Martinez also routinely told Plaintiff that she was "Shapely" and "Your ass looks fat." (FAC ¶30; Pl. Aff. ¶21). In or around November 2023, Mr. Gonzalez told Plaintiff that she had sent, "too many emails," referring to her sex/gender discrimination complaints. (FAC ¶68; Pl. Aff. ¶56). Likewise, in or around December 2023, Mr. Martinez told Plaintiff's coworkers, "Ignore Plaintiff, she doesn't know what she's talking about **because she's a woman**." (FAC ¶40; Pl. Aff. ¶31). Then, on December 21, 2023, Plaintiff was wrongfully accused of being a "no call, no show." (FAC ¶71; Pl. Aff. ¶59). Just two months later, Defendant cut Plaintiff's pay. (FAC ¶75; Pl. Aff. ¶63). Defendant also refused to accommodate Plaintiff long-standing therapy session. (FAC ¶80; Pl. Aff. ¶67). These actions,

*inter alia*, led to Plaintiff's constructive discharge. (FAC ¶99; Pl. Aff. ¶84). Thus, Plaintiff's sex was at least a motivating factor in Defendant's adverse employment actions.

Plaintiff also properly pled a hostile work environment. For such a claim, "plaintiff must show that the discriminatory harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and that a specific basis exists for imputing the objectionable conduct to the employer." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015) (internal quotations omitted). In determining whether conduct constitutes a hostile work environment, courts look to "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Bell v. N.Y.C. Dep't of Educ.*, 2026 U.S. Dist. LEXIS 159481, *16 (S.D.N.Y. Apr. 10, 2026).

In this case, the complained of behavior was severe *and* pervasive. As pled, over the course of her five years of employment, Plaintiff endured numerous comments of a sexual nature and/or misogyny, which interfered with her work performance. (FAC ¶¶19-40; Pl. Aff. ¶¶12-31). It is axiomatic that these comments would create a hostile work environment claim for a woman.

Similarly, a specific basis exists to impute the discrimination and harassment to Defendant. "An employer is strictly liable for harassment perpetuated by a supervisor, unless the employer is able to establish an affirmative defense showing that it exercised reasonable care to prevent and correct any harassing behavior and that the plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer to avoid harm otherwise." *Wiercinski v. Magia 57, Inc.*, 787 F.3d 106, 113 (2d Cir. 2015). In fact, when "sexual harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment, the employer is held strictly liable, and no affirmative defense is available." *Chin-*

*McKenzie v. Continuum Health Partners*, 876 F. Supp. 270, 283 (S.D.N.Y. 2012) (internal quotation and brackets omitted) (quoting *Redd v. N.Y. State Div. of Parole*, 678 F. 3d 166, 178 (2d Cir. 2012)).

In the instant matter, Mr. Martinez made repeated comments towards Plaintiff based on her sex, about which she complained. (FAC ¶¶19-40; Pl. Aff. ¶¶12-31). Even so, these comments **continued** and Plaintiff's suffered a cut in pay/hours, rescission of her accommodation, and was constructively discharged. (FAC ¶¶75, 80, 99). These are tangible employment actions and thus, Defendant is liable for a hostile work environment under Title VII.

Defendant also violated the NYSHRL and NYCHRL. To establish a *prima facie* case of discrimination under the NYSHRL/NYCHRL, Plaintiff need only demonstrate that she was, "treated less well than other employees because of the relevant characteristic." *Thomas v. Amazon.com Servs. LLC*, 2025 U.S. Dist. LEXIS 10401, *19 (E.D.N.Y. Jan 21, 2025). Defendant can only avoid liability if they "prove that the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider petty slights and trivial inconveniences." *Williams v. New York City Hous. Auth.*, 872 N.Y.S. 2d 27, 41 (N.Y. App. Div. 2009). Furthermore, under the NYCHRL employers are strictly liable for supervisor harassment. *Zakrzewska v. New School*, 14 N.Y. 3d 469, 479 (N.Y. 2010).

In this case, the FAC makes clear that the sexual harassment and misogyny to which Plaintiff was subjected rises above what a reasonable person would consider a petty slight or trivial inconvenience. (FAC ¶¶19-40; Pl. Aff. ¶¶12-31). Therefore, Plaintiff has pled a hostile work environment under both the "severe or pervasive" and "petty slight and trivial inconvenience" standard.

Finally, the question of whether Plaintiff endured a hostile work environment is an issue of fact that is best left for a finder of fact and is therefore, not appropriate at the pre-answer motion to dismiss stage. *See Ponticelli v. Zurich Am. Ins. Group*, 16 F. Supp. 2d 414, 429 (S.D.N.Y. 1998) ("[T]here exists an issue of fact as to whether [Plaintiff] endured a hostile work environment precluding a grant of summary judgment to Defendants. Evaluating the severity and pervasiveness of a harasser's conduct on summary judgment is neither easy nor, in many cases, appropriate."); *See also DiLaurenzio v. Atlantic Paratrans, Inc.*, 926 F. Supp. 310, 314 (E.D.N.Y. 1996) (the pervasiveness of harassing conduct "is the sort of issue that is often not susceptible of summary resolution"). Thus, a motion to dismiss in inappropriate on this claim.

**C. Plaintiff was discriminated against because of her race/religion**

Plaintiff was discriminated against based on her race. To establish a claim under Section 1981, a plaintiff must plead the following elements: "(1) the plaintiff is a member of a racial minority, (2) the defendant intended to discriminate on the basis of race, (3) the defendant's discrimination concerned one of Section 1981's enumerated activities, and (4) the plaintiff's injury would not have occurred but for the defendant's discrimination." *Mitchell*, 745 F. Supp. 3d at 102. "Section 1981 thus outlaws discrimination with respect to … employment." *Id*. Additionally, "[t]he prohibition against racial discrimination encompasses discrimination based on ancestry or ethnic characteristics." *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998). Second Circuit courts have found that this includes Puerto Rican ancestry. *See Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 23 (2d Cir. 2012). Title VII also protects against race discrimination and religious discrimination, but does not require the "but for" standard of §1981. *See Vega*, 801 F. 3d at 87.

Here, Plaintiff's supervisor made repeated comments about Plaintiff's observing Santeria and practicing "voodoo," which implicated her Puerto Rican ancestry, as Santeria is widely practiced there. (FAC ¶¶47-52; Pl. Aff. ¶¶38-43). A few months later, Defendant told Plaintiff she had made too many complaints about Mr. Martinez' offensive comments. (FAC ¶68; Pl. Aff. ¶56). Plaintiff then had her pay slashed, accommodation revoked, and was constructively discharged. (FAC ¶¶75, 80, 98; Pl. Aff. ¶¶63, 67, 84). As such, Plaintiff can establish her claim of race/religious discrimination under 42 U.S.C. 1981 and Title VII.

Additionally, Plaintiff was discriminated against based on her race and religion under the NYSHRL and the NYCHRL. These statutes protect against employment discrimination based on race and religion. N.Y. Exec. Law § 296(1)(a); N.Y. City Admin. Code § 8-107(1)(a). As stated *supra*, to make out her *prima facie* case of discrimination under these statutes, Plaintiff need only demonstrate that she was treated less well than other employees because of the relevant characteristic. *See Thomas*, 2025 U.S. Dist. LEXIS 10401 at *19. Here, Plaintiff was mocked by her supervisor based on her practice of the Santeria religion and her Puerto Rican ancestry. (FAC ¶¶47-52; Pl. Aff. ¶¶38-43). Plaintiff can therefore show that she was "treated less well than other employees" because of her religion and race.

**D. Plaintiff was discriminated against because she is a domestic violence survivor**

Defendant discriminated against Plaintiff based on her domestic violence victim status. The NYSHRL and NYCHRL provide "a general prohibition that bars an employer from discriminating on the basis of an individual's … status as a victim of domestic violence." *Morrone v. Island Park Fire Dep't*, 2021 U.S. Dist. LEXIS 66991, *6 (E.D.N.Y. Mar. 31, 2021). Here, Plaintiff disclosed to her employer that she was a victim of domestic violence when she was hired and was allowed to arrive late or work remotely as needed to address domestic violence issues.

(FAC ¶15; Pl. Aff. ¶7). However, Plaintiff was harassed based on her status as a victim of domestic violence when Ms. Mille told Plaintiff's coworkers that Plaintiff had her food stolen at a domestic violence victims' shelter, and Plaintiff's coworkers subsequently mocked her food scarcity. (FAC ¶44-46; Pl. Aff. ¶¶35-36). Similarly, in Spring 2024, Defendant insisted that Plaintiff needed to work full-time hours, even though it was aware that it was unsafe for Plaintiff to do so, due to her status of a domestic violence victim. (FAC ¶80; Pl. Aff. ¶67). As such, Plaintiff met her *prima facie* burden under the NYSHRL and NYCHRL concerning discrimination based on her domestic violence victim status.

## III. PLAINTIFF WAS RETALIATED AGAINST

### A. ADA, TITLE VII, and 42 U.S.C. §1981

The FAC pleads retaliation under the ADA, Title VII and 42 U.S.C. §1981. For a retaliation claim, a Plaintiff must demonstrate that she "(1) engaged in protected activity; (2) the [Defendant] was aware of this protected activity; (3) the [Defendant] took adverse action against the [Plaintiff]; and (4) there is a causal connection between the protected activity and the adverse action." *Shelton v. Trs. Of Columbia Univ.*, 369 Fed. App'x 200, 201 (2d Cir. 2010) (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 79 (2d Cir. 2001)); *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012).

Plaintiff repeatedly engaged in protected activity. Under the ADA requesting an accommodation is protected activity. *Wixel v. Bd. Of Educ. Of City of New York*, 287 F. 3d 138, 149 (2d Cir. 2002). Additionally, under §1981 and Title VII, "[p]rotected activity includes any opposition to an employment practice" protected under the statute. *Azzarmi v. Sedgwick Claims Mgmt. Servs.*, 2025 U.S. Dist. LEXIS 187246, *8 (S.D.N.Y. Sep. 23, 2025).

In this case, Plaintiff requested accommodations for her mental health disabilities. (FAC ¶16; Pl. Aff. ¶7). Furthermore, Plaintiff requested intermittent FMLA as an accommodation for her disability on May 1, 2024. (FAC ¶85; Pl. Aff. ¶72). Likewise, Plaintiff complained numerous times about harassment and discrimination. (FAC ¶¶31, 38, 56, 58-60, 62, 67; Pl. Aff. ¶¶46, 52). These facts are clearly protected activity under the statutes.

Additionally, the FAC pleads numerous adverse employment actions. As discussed *supra*, Defendant dismissed Plaintiff's reports of harassment, told her that she sent "too many emails," reduced Plaintiff's overall pay, rescinded her longstanding accommodations, and constructively discharged her. (FAC ¶¶56, 63, 68, 80, 99; Pl. Aff. ¶¶46, 67, 84). Accordingly, Plaintiff has met her burden as to the first three prongs.

Finally, Plaintiff properly pled causation. In the Second Circuit, "[c]ausation may be shown either through direct evidence of retaliatory animus or indirectly, by showing that the protected activity was followed closely by discriminatory treatment." *Sharikov v. Philips Med. Sys. MR*, 103 F.4th 159, 170 (2d Cir. 2024). In fact, "temporal proximity alone … [is] sufficient to establish the *de minimis* burden at the prima facie stage." *Russo v. Wyandanch Union Free Sch. Dist.*, 2024 U.S. App. LEXIS 12404, *4 (2d Cir. May 23, 2024). "Courts in this district have generally inferred causation when fewer than six months elapsed between the two events." *Rivera v. Orange Cty.*, 2013 U.S. Dist. LEXIS 30847, *30 (S.D.N.Y. Mar. 5, 2013).

Here, in April 2022, Plaintiff complained about Mr. Martinez' harassment and it continued. (FAC ¶31; Pl. Aff. ¶22). Then, in May 2023, Plaintiff complained again. (FAC ¶38; Pl. Aff. ¶29). Plaintiff complained a third time in July 2023. (FAC ¶56; Pl. Aff. ¶46). Each time she complained, her complaints were dismissed by Ms. Mille. (FAC ¶¶31, 38, 56; Pl. Aff. ¶¶22, 29, 46). Plaintiff then complained to HR. (FAC ¶60; Pl. Aff. ¶48). Shortly after Plaintiff involved HR, Ms. Mille

increased Plaintiff's workload. (FAC ¶¶63, 64; Pl. Aff. ¶53). As a result, in Fall 2023, Plaintiff complained about Ms. Mille's retaliation. (FAC ¶65; Pl. Aff. ¶55). Over the next few months, Defendant's campaign of retaliation continued. (FAC ¶¶66, 71, 73; Pl. Aff. ¶¶59, 61, 67). Then, in February 2024, Defendant cut Plaintiff's hours, which resulted in a pay decrease. (FAC ¶75; Pl. Aff. ¶¶62, 64). Afterwards, Defendant continued to discipline Plaintiff, rescinded her long standing reasonable accommodation, denied her specific FMLA request, and constructively discharged her. (FAC ¶¶90, 93, 99; Pl. Aff. ¶¶67, 78, 84). Defendant clearly retaliated against Plaintiff in violation of the ADA, Title VII, and §1981.

**C. NYSHRL and NYCHRL Retaliation**

Plaintiff was also retaliated against in violation of the NYSHRL and NYCHRL. "To establish a retaliation claim under the [NYSHRL and] the NYCHRL, a plaintiff must show that: (1) he or she engaged in a protected activity as that term is defined under the [NYSHRL and] the NYCHRL, (2) his or her employer was aware that he or she participated in such activity, (3) his or her employer engaged in conduct which was reasonably likely to deter a person from engaging in that protected activity, and (4) there is a causal connection between the protected activity and the alleged retaliatory conduct." *Menos v. Uncle Nearest, Inc.*, 2025 U.S. Dist. LEXIS 55318, *38-39 (E.D.N.Y. Mar. 25, 2025). To be clear, these statutes do not require an "adverse employment action." *See Arazi*, 2022 U.S Dist. LEXIS 56549. Instead, "causation is met so long as the action was motivated at least in part by a retaliatory motive." *Menos*, 2025 U.S. Dist. LEXIS 55318 at *39.

As noted above, Plaintiff repeatedly engaged in engaged in protected activity and Defendant's response was reasonably likely to deter a person from making similar complaints. Thus, Plaintiff pled a claim of NYSHRL and NYCHRL retaliation.

## IV. PLAINTIFF'S FMLA RIGHTS WERE VIOLATED

### A. FMLA Statue of Limitations

As a preliminary matter, Plaintiff's FMLA claims are not time-barred. "[A] three-year statute of limitations exists for willful FMLA violations." *Kemp v. Regeneron Pharms. Inc.*, 2023 U.S. Dist. LEXIS 5213, *18 (S.D.N.Y. Jan. 11, 2023). An FMLA violation "is willful if an employer either knew or recklessly disregarded whether its conduct violated the FMLA." *Id.* At the pleadings stage, a Plaintiff "need only make a general averment as to willfulness to invoke the three-year statute of limitations." *Gold v. Barry R. Carus, P.C.*, 2003 U.S. Dist. LEXIS 18254, *3 (E.D.N.Y. July 26, 2003). Here, Plaintiff requested FMLA paperwork on April 26, 2024 and May 1, 2024. (FAC ¶¶82, 85; Pl. Aff. ¶¶69, 72). Likewise, Plaintiff pled that Defendant willfully delayed giving her FMLA paperwork and rejected her specific request. (FAC ¶¶85, 86, 93, 104; Pl. Aff. ¶¶75, 78). Given that Plaintiff filed her initial Complaint on April 28, 2026[2], the statute of limitations are met.

### B. FMLA Interference

Defendant interfered with Plaintiff's FMLA rights. "To prevail on a claim of interference with her FMLA rights, a plaintiff must establish: 1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016). Notably, "an employee is not required to demonstrate an actual denial of benefits to establish a violation … **interference or restraint**

[2] Defendant's repeated reference to the date that the Summons was issued is clearly erroneous because the operative date for statute of limitations purposes is the filing of the Complaint. Fed. R. Civ. P. 3; 29 U.S.C. Sec. 2617(c)(3).

**alone, which includes discouragement, is enough**[.]" *Kemp v. Regeneron Pharms., Inc.*, 117 F.4th 63, 69 (2d Cir. 2024).

Here, Plaintiff can satisfy the first two prongs. Plaintiff was an FMLA eligible employee 29 U.S.C. § 2611 (2)(A) (2026); (FAC ¶¶10, 11). Similarly, Defendant employed more than 50 individuals within 75 miles of Plaintiff's worksite. *Id.*

Plaintiff was entitled to intermittent FMLA leave due to her mental health[3]. "An eligible employee is entitled to FMLA leave … because of a serious health condition." *Williams v. Westchester Med. Ctr. Health Network*, 2025 U.S. Dist. LEXIS 57856, *50 (S.D.N.Y. March 25, 2025). Per the DOL regulations, "chronic conditions" can render an employee eligible for FMLA. *Id*. at 52. Therefore, Plaintiff's request for intermittent FMLA leave to attend therapy for her PTSD, Major Depressive Disorder, and Generalized Anxiety Disorder, is covered. (FAC ¶16).

Additionally, Plaintiff requested FMLA paperwork on April 26, 2024, as well as May 1, 2024, and was disciplined on May 3, 2026. (FAC ¶¶89-91; Pl. Aff. ¶¶69-76). Then, on June 3, 2024, Plaintiff requested intermittent FMLA and her specific request was denied. (FAC ¶¶92, 93; Pl. Aff. ¶¶77, 78). The delay in providing the requested paperwork and denial of her request was meant to discourage Plaintiff from taking FMLA leave. Thus, Plaintiff pled a *prima facie* case of FMLA interference.

**C. FMLA Retaliation**

The FAC support Plaintiff's FMLA retaliation claim. "To establish a prima facie case of FMLA retaliation, a Plaintiff must establish that "1) [s]he exercised rights protected under the FMLA; 2) [s]he was qualified for his position; 3) [s]he suffered an adverse employment action;

[3] Defendant's entire analysis is misplaced as it ignores that an employee is entitled to FMLA leave when they suffer from a "serious health condition." 29 U.S.C. §2612(d).

and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 537-38 (S.D.N.Y. 2009).

Plaintiff exercised rights protected under the FMLA when she requested intermittent FMLA leave and Plaintiff was qualified for her position. (FAC ¶92; Pl. Aff. ¶77). Thus, the first two prongs of Plaintiff's FMLA retaliation claim are established.

Plaintiff also suffered an adverse employment action. A Plaintiff must allege "some adverse employment action likely to dissuade a reasonable worker from exercising their FMLA rights." *Catania v. NYU Langone Health Sys.*, 2022 U.S. Dist. LEXIS 220075, *15 (S.D.N.Y. Dec. 5, 2022) (internal ellipses omitted). To that end, "[t]raditional adverse employment actions include … termination of employment, a demotion evidenced by a decrease in wage or salary … [or] significantly diminished responsibilities." *Id*. (internal quotations omitted). Here, eight days after Plaintiff requested FMLA paperwork, she was disciplined as an alleged "no call/no show," even though Defendant knew she had therapy that day. (FAC ¶¶89-90; Pl. Aff. ¶76). Then, on June 23, 2024, Plaintiff was threatened with discipline if she did not "improve her attendance." (FAC ¶96; Pl. Aff. ¶81). Ultimately, Plaintiff was constructively discharged on June 25, 2024. (FAC ¶99; Pl. Aff. ¶84). Therefore, Plaintiff has met her burden under prong three.

Finally, the FAC pleads an inference of retaliatory intent. "An inference of retaliatory intent in the FMLA context can be shown when a causal connection exists between the Claimant's protected activity and the adverse action taken by the employer, which can manifest from very close temporal proximity between the protected activity and adverse action." *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 469 (S.D.N.Y. 2023) (internal quotations omitted). For temporal proximity purposes, gaps as long as 6 months have been found sufficient within this Circuit. *See Espinal v. Goord*, 558 F. 3d 119, 130 (2d Cir. 2009) (lapse of six months

sufficient to support an inference of causal connection based partly on the fact that officers were waiting for opportune time to retaliate); *Gorzynski v. JetBlue Airways Corp.*, 596 F. 3d 93, 110 – 11 (2d Cir. 2010) ("We have previously held that five months is not too long to find the causal relationship").

Here, the temporal proximity is well within these bounds. Defendant constructively discharged Plaintiff on June 25, 2024, **just two days** after Defendant threatened Plaintiff with discipline if she continued to attend her weekly therapy appointments. (FAC ¶¶96, 98; Pl. Aff. ¶¶81, 84). Plaintiff's constructive discharge also occurred mere weeks after Defendant rejected her requested FMLA, arbitrarily offering her an insufficient amount of leave. (FAC ¶93; Pl. Aff. ¶78). Therefore, Plaintiff has adequately alleged retaliation under the FMLA.

## CONCLUSION

In construing the Complaint in a light most favorable to Plaintiff, Plaintiff has pled sufficient facts to establish facially plausible causes of action. For the foregoing reasons, it is respectfully requested that Defendant's Motion to Dismiss be denied in its entirety, together with any other relief the Court deems just and proper.

Dated: August 17, 2026
New York, New York

Respectfully submitted,

**Phillips & Associates, PLLC**
*Attorneys for Plaintiff*

By: */s/ Gregory Kirschenbaum*
Gregory W. Kirschenbaum, Esq.
45 Broadway, 28th Floor
New York, NY 10006
(212) 248-7431

**CERTIFICATE OF CONFORMITY**

I, Gregory W. Kirschenbaum, am an attorney duly admitted to practice law before the United States District Court for the Southern District of New York, and hereby certify that Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint complies with the word count limit set forth in Local Civil Rule 7.1(c) as it contains 8,738 words, exclusive of the caption, table of contents, table of authorities, and signature block, but inclusive of footnotes. In preparing this certification, I relied on the word count of the word processing system used to prepare Plaintiff's Memorandum of Law.

Dated: August 17, 2026
New York, NY

*/s/ Gregory Kirschenbaum*
Gregory W. Kirschenbaum, Esq.